**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **JOSE GARDUNO GUZMAN, #02058789** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO.  4:20cv833** |
| | § | |
| **DIRECTOR, TDCJ-CID** | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Petitioner Jose Garduno Guzman, an inmate confined in the Texas prison system, with the assistance of counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was referred to United States Magistrate Judge Kimberly C. Priest Johnson for findings of fact, conclusions of law, and recommendations for the disposition of the case pursuant to 28 U.S.C. § 636, and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate Judge.

## I.  PROCEDURAL BACKGROUND

Petitioner is challenging his Collin County convictions, Cause No. 219-80007-2015. On February 26, 2016, a jury found Petitioner guilty of continuous sexual abuse of a child and indecency with a child by sexual contact. (Dkt. #14-9, pp. 102-07). The jury assessed Petitioner's punishment at thirty years' confinement and five years' confinement, respectively, with the sentences to run concurrently. (Dkt. #14-9, pp. 102, 105).

Petitioner appealed his convictions, which were affirmed on November 27, 2017. *Guzman v. State*, No. 05-16-00528-CR, 2017 WL 5663611 (Tex. App. Nov. 27, 2017) (Dkt. #14-1). Petitioner did not file a petition for discretionary review ("PDR") with the Texas Court of Criminal Appeals ("TCCA") or a petition for a writ of certiorari with the Supreme Court. (Dkt. #1, p. 3).

On December 21, 2018, Petitioner, with the assistance of counsel, filed an application for state habeas corpus relief. (Dkt. #14-20, pp. 76-106). On September 10, 2019, the state habeas court entered findings of fact and recommended Petitioner's application be denied. (Dkt. #14-23, pp. 151-85). On October 21, 2020, the TCCA denied the application without a written order. (Dkt. #14-19).

Petitioner, with the assistance of counsel, filed the instant petition on October 23, 2020 (Dkt. #1), and a supporting memorandum on November 16, 2020 (Dkt. #5). Petitioner asserts the following claims for relief:

1. Trial counsel provided ineffective assistance by failing to consult with an expert prior to trial and failing to call an expert to testify at trial.

2. Trial counsel provided ineffective assistance by failing to object to the reliability of statements made by the State's experts.

3. Trial counsel provided ineffective assistance by failing to object to the State's expert witness expressing an opinion on the truthfulness of the victim.

4. Trial counsel provided ineffective assistance by eliciting testimony during cross-examination of the State's witness, Maria Galindez, that she believed the victim.

5. Trial counsel provided ineffective assistance by failing to object to several instances of hearsay from the State's witness, Jamie Shell.

6. Trial counsel provided ineffective assistance by failing to object to hearsay from the State's witness, Kristina McClain.

7. Trial counsel provided ineffective assistance by failing to object to several instances of hearsay from the State's witness, Michelle Schuback.

8. Trial counsel provided ineffective assistance by failing to object to several instances of hearsay from the State's witness, Dan Powers.

9. Trial counsel provided ineffective assistance by failing to object to the prosecutor attacking Petitioner "over the shoulders of his attorney" during closing argument.

10.   Trial counsel provided ineffective assistance by failing to call available character witnesses to testify at the punishment phase of Petitioner's trial.

11.   Trial counsel provided ineffective assistance by failing to make a closing argument at the punishment phase of Petitioner's trial.

(Dkt. #1, pp. 6-10; Dkt. #5). The Director filed a response, arguing: (1) the Court lacks jurisdiction over Petitioner's conviction for indecency with a child because the sentence has discharged; and (2) Petitioner's claims challenging his conviction for continuous sexual abuse of a child are without merit. (Dkt. #13). Petitioner, with the assistance of counsel, filed a reply. (Dkt. #15).

## II.  FACTUAL BACKGROUND

The Fifth District Court of Appeals set out the facts as follows:

A single indictment charged appellant with both continuous sexual abuse of a young child and indecency with a child. Count I alleged that during a period that was thirty days or more in duration, appellant committed two or more acts of sexual abuse against L.O. and at the time of the commission of each act, appellant was seventeen years of age or older and L.O. was a child younger than fourteen. *See* TEX. PENAL CODE ANN. § 21.02(b) (West Supp. 2016). The indictment alleged five different acts of sexual abuse, three acts constituting indecency with a child and two constituting aggravated sexual assault. *See id.* § 21.02(c). Count II alleged appellant intentionally and knowingly, with intent to arouse and gratify the sexual desire of any person, engaged in sexual contact by touching the breast of L.O., a child younger than seventeen and not appellant's spouse, by means of his hand. *See id.* § 21.11(a)(1), (c)(1) (West 2011).

At trial, L.O.'s maternal grandmother testified that she has primary custody of L.O., who was born in December 2000. When L.O. was one-and-a-half years of age, Grandmother started a relationship with appellant. Grandmother and appellant had a son together in August 2004, but separated soon after he was born. Grandmother saw appellant from time to time because of their son. In 2007, after Grandmother got sick and her mother passed away, appellant stayed with Grandmother in her home for periods of time to help out.

When L.O. was in fifth grade, Grandmother saw appellant kissing L.O. on the lips at the house. Grandmother said something about it, and L.O. looked scared and denied that appellant had kissed her. Appellant told Grandmother she was "seeing wrong" and treated her like a liar. Grandmother did not call the police because she was not positive about what she had seen. She instead kept a closer eye on L.O. and stopped taking medication that made her groggy. Once appellant saw that

Grandmother was no longer taking the medication, he did not stay at her house as often and soon moved out for good.

L.O. was fifteen years' old and in ninth grade at the time of trial. She testified that when she was in grades three through five appellant lived in her home and was there most nights. She was in third grade the first time appellant touched her inappropriately and in fifth grade the last time he did so. L.O. described at least eight acts of sexual abuse appellant committed against her during this time frame. We do not recount the details of these acts as they are not pertinent to the specific sufficiency challenge appellant makes in this appeal. L.O. also described one instance when appellant touched her breasts with his hand. All of the incidents occurred before L.O. turned fourteen.

After the abuse stopped, L.O. continued to think about what appellant had done, and in eighth grade, she became depressed. Grandmother became aware of L.O.'s depression and took her to a hospital. Eventually, L.O. was evaluated at a mental health facility in Plano, where she told a child psychiatrist of the abuse. Following that, L.O. had a forensic interview at the Children's Advocacy Center of Collin County, which led to appellant's arrest.

The jury found appellant guilty of continuous sexual abuse of a young child and indecency with a child. It assessed appellant's punishment at thirty years' confinement and five years' confinement, respectively. . . .

*Guzman*, 2017 WL 5663611, at *1-2 (Dkt. #14-1, pp. 1-3).

### III. JURISDICTION

The Director argues the Court does not have subject matter jurisdiction over Petitioner's conviction for indecency with a child because the sentence has discharged. (Dkt. #13, pp. 6-7). The Court agrees.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). They must presume a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). They have a "continuing obligation to examine the basis for jurisdiction." *MCG, Inc. v.*

4

*Great W. Energy Corp.*, 896 F.2d 170 173 (5th Cir. 1990). Federal courts may *sua sponte* raise jurisdictional issues at any time. *Id.* They "must dismiss an action whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction over the subject matter." *Hunnel v. Dir., TDCJ-CID*, No. 4:21CV010, 2021 WL 4859927, at *2 (E.D. Tex. Aug. 11, 2021), *report and recommendation adopted*, No. 4:21CV10, 2021 WL 4844806 (E.D. Tex. Oct. 18, 2021).

Federal courts have jurisdiction to entertain petitions for writs of habeas corpus only from persons who are "in custody in violation of the Constitution or laws of the United States." 28 U.S.C. § 2254. A petitioner satisfies the "in custody" requirement when the challenged conviction and sentence had not fully expired at the time the petition was filed. *Carafas v. Lavelle*, 391 U.S. 234, 238 (1968). A petitioner is not "in custody" for a particular conviction, however, when he "suffers no present restraint" from the challenged conviction. *Maleng v. Cook*, 490 U.S. 488, 492 (1989); *Hendrix v. Lynaugh*, 888 F.2d 336, 338 (5th Cir. 1989). "[O]nce the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual 'in custody' for purposes of a habeas attack upon it." *Maleng*, 490 U.S. at 492.

If a petitioner was no longer serving the challenged judgment when he filed his § 2254 petition because he fully discharged the sentence imposed upon that judgment, the "in custody" requirement is not met, even if the challenged sentence was used to enhance a subsequent sentence that is not under attack in the § 2254 petition. *Id.*; *Hunnel*, No. 4:21CV010, 2021 WL 4859927, at *3; *see also Lackawanna Cnty. Dist. Attorney v. Coss*, 532 U.S. 394, 403-04 (2001) (holding "once a state conviction is no longer open to direct or collateral attack in its own right . . . the conviction may be regarded as conclusively valid").

The Director filed an affidavit of Charley Valdez. (Dkt. #22-1). In his affidavit, Mr. Valdez states he is employed as a Program Supervisor V for the Classifications and Records Department of the Texas Department of Criminal Justice/Correctional Institutions Division. (Dkt. #22-1, p. 2). He states he has reviewed records for Petitioner, and Petitioner's sentence for his conviction for indecency with a child, Collin County Cause Number 219-80007-2015, discharged on October 23, 2019. (Dkt. #22-1, pp. 2-3). Although Petitioner remains in custody for continuous sexual abuse of a child, he is not "in custody" for his indecency with a child conviction and was not in custody at the time he filed the instant petition on October 23, 2020. Therefore, the Court does not have subject matter jurisdiction over Petitioner's conviction for indecency with a child.

## IV.  STANDARD FOR FEDERAL HABEAS CORPUS RELIEF

The role of federal courts in reviewing habeas corpus petitions by prisoners in state custody is exceedingly narrow. A person seeking federal habeas corpus review must assert a violation of a federal constitutional right. *Lowery v. Collins*, 988 F.2d 1354, 1367 (5th Cir. 1993); *Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000). Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996); *Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005). In the course of reviewing state proceedings, a federal court does not sit as a super state appellate court. *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986).

The prospect of federal courts granting habeas corpus relief to state prisoners has been further limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The new provisions of § 2254(d) provide that an application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings

6

unless the adjudication of the claim: (1) was contrary to federal law then clearly established in the holdings of the Supreme Court; (2) involved an unreasonable application of clearly established Supreme Court precedent; or (3) was based on an unreasonable determination of the facts in light of the record before the state court. *See Harrington v. Richter*, 562 U.S. 86, 97-98 (2011).

The statutory provision requires federal courts to be deferential to habeas corpus decisions on the merits by state courts. *Renico v. Lett*, 559 U.S. 766, 773 (2010); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). Furthermore, a state court's factual findings are entitled to deference and are presumed correct unless the petitioner rebuts those findings with clear and convincing evidence. *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir. 2010); *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006); *Valdez v. Cockrell*, 274 F.3d 941, 947 (5th Cir. 2001); *see also Moore*, 313 F.3d at 881 (the statutory provision requires federal courts to be deferential to habeas corpus decisions on the merits by state courts). This deference extends not only to express findings of fact, but also to any implicit findings of the state court. *Garcia*, 454 F.3d at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005)).

A decision by a state court is "contrary to" the Supreme Court's clearly established law if it "applies a rule that contradicts the law set forth in" the Supreme Court's cases. *Brown v. Payton*, 544 U.S. 133, 141 (2005) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas corpus court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, that application must be objectively unreasonable. *Id.* at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'" on the correctness of the decision. *Richter*, 562 U.S. at 87 (quoting *Yarborough*

*v. Alvarado*, 541 U.S. 652, 664 (2004)). "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* at 98.

"In Texas writ jurisprudence, usually a denial of relief rather than a 'dismissal' of the claim by the Court of Criminal Appeals disposes of the merits of a claim." *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *see also Henderson v. Cockrell,* 333 F.3d 592, 598 (5th Cir. 2003); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (holding a "denial" signifies an adjudication on the merits while a "dismissal" means the claim was declined on grounds other than the merits). Thus, a state application that is denied without written order by the TCCA, as in the present case, is an adjudication on the merits. *See Singleton*, 178 F.3d at 384; *Ex parte Torres*, 943 S.W.2d at 472. Where the decision is a summary denial or affirmance, however, a "federal [habeas] court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning."[1] *Wilson v. Sellers*, 584 U.S. ___, ___, 138 S. Ct. 1188, 1192 (2018).[2]

---

[1] The Director may rebut this presumption by showing that the most recent state court's unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were argued or supported by the record that the state court reviewed. *See Sellers*, 584 U.S. at ___, 138 S. Ct. at 1192; *Wesson v. Dir., TDCJ-CID*, No. 1:19-CV-00187-H, 2022 WL 3928513, at *3 (N.D. Tex. Aug. 30, 2022), *appeal dismissed sub nom. Wesson v. Lumpkin*, No. 22-10990, 2023 WL 2881423 (5th Cir. Mar. 10, 2023).

[2] *See also Miller v. Dir., TDCJ-CID*, No. 3:20-CV-388-D-BN, 2021 WL 6339551, at *7 (N.D. Tex. Nov. 1, 2021) ("While the TCCA did not issue a written opinion, pursuant to the 'look through' doctrine, this Court can look to the detailed findings of the state habeas trial court to glean the TCCA's reasoning."), *report and recommendation adopted*, No. 3:20-CV-0388-D, 2022 WL 93934 (N.D. Tex. Jan. 10, 2022), *certificate of appealability denied sub nom. Miller v. Lumpkin*, No. 22-10081, 2022 WL 2913760 (5th Cir. July 12, 2022); *Kinslow v. Dir., TDCJ-CID*, No. 5:17-CV-171, 2020 WL 7366353, at *6 (E.D. Tex. Nov. 4, 2020) ("Although the Texas Court of Criminal Appeals did not address this claim in the Order denying relief, this Court must 'look through' the Court of Criminal Appeals' unexplained decision to the [state habeas trial court's] 'relevant rationale' for the denial of the claim, presuming the higher court 'adopted the same reasoning.'") (citing *Wilson*, 584 U.S. at ___, 138 S. Ct. at 1192), *report and recommendation adopted*, No. 517CV00171RWSCMC, 2020 WL 7364603 (E.D. Tex. Dec. 15, 2020); *Martinez v. Stephens*, No. CIV.A. H-13-3729, 2015 WL 1097372, at *7 (S.D. Tex. Mar. 11, 2015) (where the TCCA denied without written order the petitioner's state habeas application, and the state habeas court entered detailed findings of fact and conclusions of law regarding the petitioner's claims, the federal court "looks through" the TCCA's order to the state habeas court's decision—the last reasoned opinion on the matter); *Gavin v. Stephens*, Civil Action NO. H-

In addition to the standard of review imposed by the AEDPA, the petitioner must also show any constitutional error had a "substantial and injurious effect or influence" on the verdict to be entitled to habeas relief. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The Supreme Court explained that, while the passage of the AEDPA "announced certain new conditions to [habeas] relief," it did not supersede or replace the harmless error standard announced in *Brecht*. *Brown v. Davenport*, 596 U.S. 118, 134 (2022). In other words, a habeas petitioner must also satisfy *Brecht*, even if the AEDPA applies. *See id.* ("[A] federal court must *deny* relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA. But to *grant* relief, a court must find that the petition has cleared both tests.") (emphasis in original).

Additionally, federal habeas relief is foreclosed if a claim: (1) is procedurally barred as a consequence of a failure to comply with state procedural rules, *Coleman v. Thompson*, 501 U.S. 722 (1991); or (2) seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced, *Teague v. Lane*, 489 U.S. 288 (1989).

Thus, the federal writ serves as a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 562 U.S. at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)). "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102.

## V.  ANALYSIS

Petitioner's habeas claims all concern allegations of ineffective assistance of counsel. A petitioner who seeks to overturn his conviction on the grounds of ineffective assistance of counsel must prove entitlement to relief by a preponderance of the evidence. *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995). Ineffective assistance of counsel claims are governed by the Supreme Court's

---

14-0501, 2014 WL 5426483, at *4 (S.D. Tex. Oct. 21, 2014) (applying "look through" doctrine to state habeas trial court's finding of fact when the TCCA denied relief without written order).

standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* provides a two-pronged standard, and the petitioner bears the burden of proving both prongs. *Id.* at 687.

Under the first *Strickland* prong, the petitioner must show counsel's performance was deficient. *Id.* To establish deficient performance, he must show "counsel's representation fell below an objective standard of reasonableness," with reasonableness examined under professional norms prevailing at the time counsel rendered assistance. *Id.* at 688. The *Strickland* court further explained:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight . . . .

*Id.* at 689 (citations omitted). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted).

Under the second prong of the *Strickland* test, the petitioner must show his attorney's deficient performance resulted in prejudice. *Id.* at 687. To satisfy the prejudice prong, the habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. An ineffective assistance of counsel claim fails if a petitioner cannot satisfy either the deficient performance or prejudice prong; a court need not evaluate both if he makes an insufficient showing as to either. *Id.* at 697.

In addition to applying the *Strickland* two-prong test, a federal habeas court must review a state petitioner's ineffective assistance of counsel claim "through the deferential lens of [28 U.S.C.] § 2254(d)." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). Reviewing Petitioner's ineffective assistance of counsel claim through the lens of the AEDPA means that he has a higher bar to exceed in order to prevail. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). Moreover, unreasonableness under *Strickland* and under § 2254(d) are not the same. First, "[t]he *Strickland* standard is a general one, so the range of reasonable applications is substantial." *Id.* Second, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* The Court must consider not only whether the state court's determination was incorrect, but also "whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Thus, in light of the deference accorded by § 2254(d), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101.

Furthermore, a petitioner's allegations of ineffective assistance of counsel must be supported by the record. *United States v. Johnson*, 679 F.2d 54, 58-59 (5th Cir. 1982). Even when liberally construing *pro se* pleadings, "mere conclusory allegations on a critical issue . . . are insufficient to raise a constitutional issue." *Black v. Davis*, 902 F.3d 541, 547 (5th Cir. 2018) (citation omitted). More specifically, conclusory statements are insufficient to sustain a claim of

ineffectiveness. *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001); *see also Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.").

Petitioner's ineffective assistance claims were fully developed during the state habeas proceedings. In response to Petitioner's state habeas application, lead trial counsel Gilbert Medina, Jr. ("Counsel Medina") and his c-counsel, B. Lydia Pilgrim ("Counsel Pilgrim") (together, "trial counsel") submitted affidavits addressing Petitioner's claims. (Dkt. #14-21, pp. 107-19, 134-46). The state habeas court found both Counsel Medina and Counsel Pilgrim were officers of the court, "well known to the court, and credible," and found their affidavits were credible. (Dkt. #14-23, p. 151, ¶¶ 1-4). The state habeas court addressed and rejected each of Petitioner's ineffective assistance claims, and although it did not expressly cite *Strickland*, its analysis is consistent with the *Strickland* standards. (Dkt. #14-23, pp. 151-85).

A. **Guilt Phase Ineffective Assistance of Counsel Claims**

### 1. Failure to Consult with and Call an Expert Witness (Ground One)

Petitioner contends trial counsel was ineffective for failing to consult with and call an expert to testify at trial in order to challenge or rebut the State's witnesses' testimony, which Petitioner alleges supported, corroborated, and bolstered the victim's testimony. (Dkt. #1, p. 6; Dkt. #5, pp. 13-19).

"[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978). Further, the presentation of witness testimony is essentially strategy and, thus, within the trial counsel's domain. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). A habeas

petitioner must overcome a strong presumption counsel's decision in not calling a particular witness was a strategic one. *See Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir. 1984). In order for a petitioner to demonstrate the requisite *Strickland* prejudice, the petitioner must show not only that the witness would have testified at trial but also that this testimony would have been favorable. *Alexander*, 775 F.2d at 602 (citing *Boyd*, 661 F.2d at 390); *see also Gomez v. McKaskle*, 734 F.2d 1107,1109-10 (5th Cir. 1984) (the petitioner failed to meet his burden of showing uncalled witnesses would have testified favorably to the petitioner's case).

Before jury selection, trial counsel requested a continuance because his expert "who would counteract the forensic examiner" was unavailable to testify on the date of the trial. (Dkt. #14-13, pp. 7-9). The trial court denied the motion. (Dkt. #14-13, p. 13).

At trial, the State presented Michelle Schuback, the director of case management at the Children's Advocacy Center, as an expert on how forensic interviews are conducted. *Guzman*, 2017 WL 5663611, at *2 (Dkt. #14-1, p. 4). Schuback testified generally about forensic interviews and then testified specifically about the victim's interview, including the victim's ability to describe the abuse, to offer a detailed and consistent narrative, to provide sensory details, to identify her abuser, and to use gestures to describe what happened. (Dkt. #14-15, pp. 14-38, 67). Schuback explained one purpose of a forensic interview is "to look for any trauma that might be associated with what happened to that child so that we can make the appropriate referrals following the interview." (Dkt. #14-15, p. 14). Schuback testified forensic interviewers generally are given the child's name, the child's age, and whether the allegations concern sexual or physical abuse, or if the interviewer needs to screen for everything. (Dkt. #14-15, p. 16). Schuback further testified the interviewers like to have limited information to "prevent[] the interviewer from accidentally introducing information that the child hasn't already said." (Dkt. #14-15, pp. 16-17).

13

Schuback testified she saw no indication the victim had been coached nor did she see signs of exaggeration or suggestiveness. (Dkt. #14-15, pp. 35-36, 40, 66). Schuback testified it was very common for children not to outcry immediately after sexual abuse. (Dkt. #14-15, pp. 28-29); *see also Guzman*, 2017 WL 5663611, at *2 (Dkt. #14-1, p. 4). When the prosecutor asked Schuback why children delayed, Petitioner's counsel objected that the question "calls for psychological expertise" and speculation. (Dkt. #14-15, p. 28); *see also Guzman*, 2017 WL 5663611, at *2 (Dkt. #14-1, p. 4)*. The trial court overruled the objection. (Dkt. #14-15, p. 28); *see also Guzman*, 2017 WL 5663611, at *2 (Dkt. #14-1, p. 4). Schuback then testified that there are a number of reasons children delay disclosure of abuse, including shame and guilt, lack of understanding that what happened was wrong, fear of the perpetrator, love for the perpetrator, or wanting to protect other family members. (Dkt. #14-15, pp. 28-29); *see also Guzman*, 2017 WL 5663611, at *2 (Dkt. #14-1, p. 4).

The State also presented Dan Powers, the clinical director of the Children's Advocacy Center of Collin County. Powers testified it is not uncommon for abusers to abuse children in front of other people. (Dkt. #14-15, p. 189). Powers testified the "guilt and shame of experiencing abuse is something that children carry long into adulthood." (Dkt. #14-15, p. 185). He also testified it is not surprising a victim who is dependent on an abuser to not disclose the abuse. (Dkt. #14-15, pp. 188-89). Powers testified the forensic interview was conducted properly—specifically, there was no sign of leading or suggestiveness by the interviewer—and the victim was able to provide sensory and chronological details and a consistent narrative. (Dkt. #14-15, pp. 198-99).

In his state habeas application, Petitioner argued trial counsel knew the State would call these witnesses or ones like them but did not consult with an expert of their own prior to trial, and therefore, trial counsel rendered ineffective assistance. In support of this claim, Petitioner

submitted the affidavit of Michael C. Gottlieb, Ph.D. ("Dr. Gottlieb"), along with Dr. Gottlieb's curriculum vita and report of his findings and conclusions. (Dkt. #14-21, pp. 13-69). Dr. Gottlieb opined that the State's experts' statements are contradicted by existing science, or questionable under existing science, and he expressed concern regarding how the forensic interview was conducted. (Dkt. #14-21, pp. 13-69). According to Dr. Gottlieb, if Petitioner's trial counsel had retained him before trial, he would have been available and willing to testify at trial about the findings and opinions in his report. (Dkt. #14-21, p. 14). Those findings and conclusions included the following:

- The interviewer "asked numerous restrictive, suggestive, and leading questions that unnecessarily risked altering the [victim's] report." (Dkt. #14-21, p. 68).

- "[O]n those occasions when the [victim] provided a narrative response," the forensic interviewer "routinely failed to repeat what she said," risking the loss of "potentially relevant information." (Dkt. #14-21, p. 68).

- When the forensic interviewer "told the [victim] that she had a 'hard time understanding' her, she risked blaming the [victim] for not adequately expressing herself when it was [the interviewer's] responsibility to clarify her report at every step of the interview." (Dkt. #14-21, p. 68).

- Schuback and Powers misled or falsely implied:

  - leading and suggestive questions were not used;

  - specific, close-ended questions promote reliable answers;

  - the interviewer properly repeated the child interviewee's statements;

  - a forensic interviewer can identify trauma associated with what happened to a child;

  - there is a scientifically reliable way to determine if a child has been coached;

- outcries are often delayed;

- in most, if not all, child-abuse cases "[k]ids often think it's their fault" and "[t]he guilt and shame of experiencing abuse is something that children carry long into adulthood"; and

- it is common for children to be abused in front of others.

(Dkt. #14-21, pp. 61-64).

Counsel Medina's affidavit responded to Petitioner's claim as follows:

11.    Did counsel consult with an expert on forensic interviews? If not, why [not]?

This question is overbroad. Yes.

12.    Did counsel discuss the decision not to call an expert on forensic interviews with Applicant?

I discussed all trial matters with the Applicant, including the problems with obtaining an expert witness, my requests for more time to find and retain expert witnesses (denied by the Court), and the prosecution's failure to properly disclose, identify and provide the Applicant with information about the prosecution's expert witnesses who later testified at trial over my objection.

13.    Did Counsel request a continuance based on the availability of an expert? What was the trial court's ruling?

Yes. The Court denied my several requests for continuance.

14.    Did Counsel cross-examine Michelle Schuback?

Yes.

15.    Did counsel cross-examine Dan Powers?

Yes.

(Dkt. #14-21, p. 136). Counsel Pilgrim's affidavit provided:

10.    What was counsel's defensive strategy in this case?

That was left to Mr. Medina. I believe that an expert was going to be called to review the allegations made against Mr. Garduno Guzman and attack the credibility of the child and grandmother.

11.   Did counsel consult with an expert on forensic interviews[ ][?] If not, why?

Answer: I recall Mr. Medina telling me he had been looking for an expert. As I recall the expert was willing to be the expert if the trial was on another date. Mr. Medina did ask for a continuance for the purpose of having the expert to testify. But, the Judge denied the motion.

12.   Did counsel discuss the decision not to call an expert on forensic interviews with Applicant[?]

Answer: I do not know if Mr. Medina counseled the Applicant that he was not going to call an expert to testify. Mr. Medina consulted with the Applicant daily during the trial and even before. Sometime I went in with Mr. Medina and other times I did not.

13.   Did Counsel request a continuance based on the availability of an expert?

a.     what was the trial court's ruling?

Answer: Yes Mr. Medina did request for a continuance. I believe he did it orally before the court or by a motion prior to the trial. The Court denied the motion.

14.   Did Counsel cross-examine Michelle Schuback?

Answer: Yes. Mr. Medina did cross-examine Michelle Schuback.

15.   Did counsel cross-examine Dan Powers?

Answer: Yes. Mr. Medina did cross-examined Dan Power.

(Dkt. #14-21, pp. 108-09).

While finding trial counsel and their affidavits to be credible (Dkt. #14-23, p. 151, ¶¶ 1-4), the state habeas court found Dr. Gottlieb's affidavit was "not credible," noting Dr. Gottlieb was hired by Petitioner "to attack the forensic interview and the State's experts" and made "generalized statements in his affidavit with limited citation to the materials he [was] relying on to attack the State's evidence." (Dkt. #14-23, p. 151, ¶¶ 5-7). The state habeas court then issued the following

findings and conclusions concerning Petitioner's claim that trial counsel failed to consult with and

call an expert witness at trial:

*Failure to Consult with and Call an Expert*

17.    Applicant alleges that his trial counsel was ineffective for failing to consult with and call an expert to help rebut testimony from two of the State's witnesses;

18.    Applicant has attached an affidavit from an expert who he claims should have been consulted with to guide counsel through the State's expert testimony and should have been called to challenge the State's expert testimony;

19.    Counsel Pilgrim was not the lead attorney in this case, but assisted Counsel Medina with trial preparation;

20.    Counsel Pilgrim believes that an expert was going to be called to review the allegations and attack credibility of . . . both the victim and her grandmother;

21.    Counsel Medina told Pilgrim that he had been looking for an expert, and that expert was willing to participate if the trial was held on a different date;

22.    Counsel Medina asked for a continuance for the purpose of having an expert testify;

23.    The continuance was denied;

24.    Counsel Medina consulted with Applicant daily before and during trial;

25.    Counsel Medina discussed the problem with obtaining an expert witness and his request for more time to find and retain expert witnesses with Applicant;

26.    Counsel did consult with an expert;

27.    Applicant has failed to establish by a preponderance of the evidence that counsel was deficient for failing to consult with an expert or that he was prejudiced by a failure to consult with an expert;

28.    Counsel had an expert that was willing to testify but was unable to testify at the time of trial, and counsel's requests for a continuance were denied;

29.     Applicant has not shown that it is the standard practice in Collin County for defense attorneys to call expert witnesses to rebut the testimony of the State's experts in lieu of cross-examining the State's experts;

30.     It is reasonable for an attorney to decide not to call his own expert in light of the fact that the State would be able to cross-examine that witness and the potential for having a defense expert agree with questions and scenarios presented by the State;

31.     Applicant has failed to prove by a preponderance of the evidence that counsel was ineffective for failing to call an expert to testify;

32.     Applicant has wholly failed to prove that counsel was ineffective for failing to use an expert to either object to or elicit certain testimony;

33.     Applicant's concern in his application for writ of habeas corpus is that counsel did not utilize an expert such as the one he has now hired and who has presented an affidavit in this case, Dr. Michael C. Gottlieb, to challenge the testimony of Michelle Schuback and Dan Powers;

34.     Schuback did not give any details of the victim's statements to the forensic interviewer during the interview;

35.     Counsel Medina objected approximately twelve times during the State's direct examination of Schuback;

36.     Among the objections were (a) to Schuback's testimony as a whole because she was not the actual forensic interviewer; (b) to the State's question about whether the videos [of] forensic interviews were admissible at trial, which was sustained; (c) that Schuback was not a psychologist and could not testify whether it was common not to outcry; and (d) that Schuback was not a psychologist and could not testify regarding egocentricity, which was sustained;

37.     During cross-examination, Counsel Medina questioned Schuback about training indicating that part of the forensic interview is to facilitate prosecution and that her office is housed with CPS and police;

38.     Counsel [asked] questions about suggestiveness and influence, and whether some of the forensic interviewer's behavior during the forensic interview could be considered suggestive;

39.     Counsel Medina had Schuback admit that she was not there to tell the jury that they should believe the victim's statements during the interview;

40.    Counsel Medina further questioned Schuback about potential suggestiveness during the forensic interview during his recross examination;

41.    Also during recross, Counsel Medina elicited testimony that Schuback had not attended certain training and the precise information that forensic interviewers have before the interview;

42.    Despite counsel's vigorous objections and cross-examination of Schuback, Applicant claims that Counsel Medina was ineffective for failing to utilize an expert such as Gottlieb to (a) show that the forensic interview techniques used by the advocacy center were not subjected to peer review and ha[ve] not been scientifically tested, (b) explain that trauma is not specific to child abuse and that interviews are not a mental status examination designed to uncover trauma, (c) point out that leading, closed-ended questions were used, and (d) point out the routine failure to repeat back what the victim said;

43.    According to Applicant, because Counsel Medina failed to elicit this testimony, he was not provided with a fair trial;

44.    Throughout his affidavit, Gottlieb refers to a "scientifically validated protocol";

45.    Gottlieb fails to establish that such a protocol actually exists;

46.    It appears that Gottlieb is merely relying on a book to support his bare assertion that such a protocol exists, which he cites as *Investigative Interviews of Children* by Poole and Lamb;

47.    The entire title of the book is, however, *Investigative Interviews of Children: A Guide for Helping Professionals*;

48.    Gottlieb is relying on a guide, not a scientific handbook to support his assertion that there exists a "scientifically validated protocol";

49.    Applicant has not shown that such a protocol exists;

50.    Absent a showing that this protocol exists, Applicant has failed to establish by a preponderance of the evidence that counsel was deficient or that the outcome of trial would have been different;

51.    Gottlieb claims that Schuback implied that she was able to identify and diagnose symptoms of mental health disorders;

52      Schuback's actual testimony was that she also looks "for any trauma that might be associated with what happened to that child so that we can make the appropriate referrals following the interview" 4 RR 14;

53.     Schuback never testified or left an impression with the jury that she was a mental health professional or that she was using the forensic interview as some type of diagnostic tool;

54.     There was nothing in Schuback's testimony to indicate that she was attempting to diagnose a mental health disorder;

55.     Applicant has failed to prove by a preponderance of the evidence that counsel was deficient for failing to cross-examine Schuback on this testimony or to call an expert witness to testify that she was not qualified to conduct a mental health evaluation;

56.     Gottlieb makes a bare assertion that leading, close ended questions were used during the interview despite the fact that information should be elicited through open-ended questions;

57.     Gottlieb has failed to prove that that such a protocol is required;

58.     Absent a showing that this protocol exists, Applicant has failed to establish by a preponderance of the evidence that counsel was deficient or that the outcome of trial would have been different;

59.     Gottlieb claims that Schuback failed to testify that the interviewer failed to repeat back what the child said during the interview;

60.     Gottlieb does not explain how this fact affected the interview or the claims against Applicant;

61.     Applicant has failed to establish by a preponderance of the evidence that counsel was deficient for failing to cross-examine Schuback on this issue or for failing to have an expert testify about this issue or that the outcome of the trial would have been different;

62.     Applicant has failed to show how general testimony about the reliability of forensic interviews at the Collin County Advocacy Center and whether closed-ended questions were used or the interviewer failed to repeat back what the victim said would have made any challenge to the validity of Schuback's testimony successful;

63.     Dan Powers is the director of the advocacy center and was called to testify about the dynamics of sexual abuse of children;

64.    During cross-examination of Powers, Counsel Medina elicited testimony that Powers was there only to discuss the dynamics of sexual abuse and was not there to suggest that anyone believe the victim;

65.    Counsel elicited testimony that children lie and children can be manipulated;

66.    Counsel Medina's cross-examination was effective;

67.    Applicant alleges that counsel was ineffective for not using an expert to establish that (a) Powers ignored research showing it is best to use open-ended questions, (b) explain that the interview was not done in a scientifically reliable manner, and (c) Powers did not cite to studies that support his testimony that it is not uncommon to abuse a child in front of others;

68.    Gottlieb claims that Powers ignored research regarding the use of open-ended questions and did not explain that the interview techniques were not scientifically reliable;

69.    Absent a showing that this protocol exists, Applicant has failed to establish by a preponderance of the evidence that counsel was deficient or that the outcome of trial would have been different;

70.    Gottlieb attacks Powers for failing to cite studies supporting his testimony that [] it is not uncommon for abusers to abuse a child in front of others;

71.    As an expert, Powers was free to base his testimony on his own experience;

72.    Gottlieb does not provide any information on how this failure to cite to studies affected Powers['] testimony or how the testimony would have been otherwise beneficial to Applicant;

73.    Applicant has failed to show by a preponderance of the evidence that counsel was deficient for failing to find an expert that would have told him to ask Powers to cite studies or to testify that Powers did not cite studies and that the outcome would have been different;

74.    Applicant has failed to show how general testimony about the reliability of forensic interviews at the Collin County Advocacy Center and whether closed-ended questions were used or Powers' reliance on his experience as opposed to citation to academic studies would have made any challenge to the validity of Powers' testimony successful[.]

(Dkt. #14-23, pp. 153-61). The TCCA denied relief without written order, which was an adjudication on the merits. *See Singleton*, 178 F.3d at 384.

A review of the record fails to show the state court's determination of this issue was in conflict with established federal law or was objectively unreasonable, and nothing in the record rebuts the presumption of factual correctness of the state court's findings with clear and convincing evidence. Trial counsel did in fact consult with an expert who was willing, but unavailable, to testify at trial. Trial counsel's efforts to secure a trial continuance so that the expert could testify were unsuccessful. The fact trial counsel's efforts were not successful does not render his performance unconstitutionally deficient. *See Martinez v. Dretke*, 99 Fed. Appx. 538, 543 (5th Cir. 2004) ("[A]n unsuccessful strategy does not necessarily indicate constitutionally deficient counsel."). Additionally, trial counsel is not deficient for failing to retain a dubious expert witness. The state habeas court found Gottlieb not to be credible, noting he relied on a "guide" for professionals conducting investigative interviews, not a scientific publication, to support his assertion the forensic interviewer did not follow "scientifically validated protocol." Petitioner does not rebut this finding with clear and convincing evidence. Furthermore, and as found by the state court, Petitioner does not demonstrate the standard practice for defense attorneys in Collin County at the time of Petitioner's trial was to call expert witnesses to rebut the testimony of the State's experts instead of cross-examining those experts, as trial counsel effectively did in this case. The trial transcripts reflect trial counsel vigorously and thoroughly cross-examined Shuback and Powers and lodged objections to their testimony, many of which were sustained. As such, Petitioner fails to demonstrate trial counsel's representation fell below an objective standard of reasonableness.

Moreover, Petitioner fails to demonstrate there was a reasonable probability that, but for trial counsel's failure to retain Gottlieb or a similar expert, the outcome of the trial would have been different. Indeed, even had trial counsel presented an expert like Gottlieb to attack the testimony of Schuback and Powers, there was other evidence beyond their testimony sufficient to convict Petitioner—namely, the victim's testimony. As the TCCA held on direct appeal, "[the victim's] testimony *alone* is sufficient to support the convictions," and "[a]ny lack of corroboration does not make the evidence insufficient." *Guzman*, No. 05-16-00528-CR, 2017 WL 5663611, at *2 (Dkt. #14-1, p. 4) (emphasis added). The jury believed the victim's testimony, *id.*; thus, even if trial counsel had presented an expert who testified the forensic interview was conducted contrary to "scientifically validated protocol," and even assuming the jury would have credited this expert's testimony, the victim's testimony remained, and that testimony was sufficient for the jury to find Petitioner guilty beyond a reasonable doubt. Having not shown deficient performance or prejudice, the state court's denial of this claim was not contrary to, or an unreasonable application of, federal law. Petitioner has failed to show there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98. Therefore, Petitioner is not entitled to habeas relief on Ground One, and the claim should be denied.

### 2. Failure to Object (Grounds Two, Three, Five, Six, Seven, Eight, and Nine)

Petitioner asserts trial counsel was ineffective for failing to object in several instances. A failure to object does not constitute deficient representation unless a sound basis exists for objection. *See Roberts v. Thaler*, 681 F.3d 597, 611 (5th Cir. 2012) ("[C]ounsel is not required to make futile motions or objections." (quoting *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990)); *Green*, 160 F.3d at 1037 (failure to make frivolous objections does not cause counsel's performance to fall below an objective level of reasonableness); *Emery v. Johnson*, 139 F.3d 191,

24

198 (5th Cir. 1997) (a futile or meritless objection cannot be grounds for a finding of deficient performance); *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."). Even with a sound basis, however, an attorney may render effective assistance despite a failure to object when the failure is a matter of trial strategy. *See Burnett v. Collins*, 982 F.2d 922, 930 (5th Cir. 1993) (noting a failure to object may be a matter of trial strategy as to which courts will not second guess counsel). Furthermore, a determination of ineffectiveness depends on whether an objection would have been sustained had it been made. *United States v. Oakley*, 827 F.2d 1023, 1025 (5th Cir. 1987).

> a. *Failure to object to the reliability of the State's experts' testimony (Ground Two)*

Petitioner asserts trial counsel was ineffective for failing to object to the reliability of the State's experts' testimony by either a contemporaneous objection or a request for a *Daubert* hearing. (Dkt. #1, p. 6; Dkt. #5, pp. 18-22).

As previously discussed, the State presented Schuback, the director of case management at the Children's Advocacy Center, and Powers, the clinical director of the Children's Advocacy Center of Collin County. In addition to their testimony detailed above, Schuback and Powers testified about their education, training, and experience. Schuback testified she supervised several programs at the Children's Advocacy Center, including the forensic interview program. (Dkt. #14-15, p. 8). She has a bachelor's degree in child development and a master's degree in social work and is a licensed clinical social worker. (Dkt. #14-15, p. 8). At the time of trial, Schuback had worked for the advocacy center for thirteen years. (Dkt. #14-15, p. 8). She had conducted forensic interviews since 2002 and had conducted about 3,000 of them. (Dkt. #14-15, pp. 10, 12). She testified about the training she had and continues to receive. (Dkt. #14-15, pp. 10-12). On direct appeal, the Fifth District Court of Appeals held that "[b]ased upon Schuback's education, training,

and experience conducting forensic interviews," the trial court did not abuse its discretion in determining Schuback "possessed the necessary expertise to testify about the reasons a child would delay making an outcry of sexual abuse." *Guzman*, No. 05-16-00528-CR, 2017 WL 5663611, at *3 (Dkt. #14-1, p. 5).

Powers, the clinical director of the Children's Advocacy Center of Collin County, has a bachelor's and master's degree in "clinical and social work," and he is a licensed clinical social worker, which allows him to practice independently to diagnose and treat mental and emotional disorders. (Dkt. #14-15, p. 183). Powers is also a licensed sex offender treatment provider and has "special expertise in the area of sexual abuse." (Dkt. #14-15, p. 183). At the time of trial, Powers had over twenty-seven years of experience "dealing with children who experience victimization of abuse." (Dkt. #14-15, p. 183).

In his federal petition, Petitioner does not directly challenge the qualifications of the State's experts, Schuback or Powers; rather, he asserts "Dr. Gottlieb is far more educated and accomplished than the State's experts, and he's far more knowledgeable about the research in the field of interviewing children," and therefore, Dr. Gottlieb's affidavit demonstrated "the inaccuracy of the testimony of the State's experts" who "did not point to a single scientific study validating the procedures used by the Collin County Advocacy Center." (Dkt. #5, pp. 20-21). Petitioner thus concludes "there can be no imaginable or tactical reason for defense counsel's failure to challenge the State's experts' testimony, via a *Daubert* hearing or otherwise." (Dkt. #5, p. 21).

When Petitioner raised the issue in the state habeas proceeding, Counsel Medina addressed the claim as follows:

3.      What is counsel's criminal law experience?

26

Before law school, I worked for Texas Child Protective Services, Child Sexual Abuse Division, and after I became a lawyer, I worked for Child Protective Services for 19 years, eventually as a regional attorney for nineteen counties in North Texas. I also attended social work and continuing legal education classes. In my private practice, approximately 95% of my cases are criminal matters. I have tried felony cases, including capital murder, aggravated sexual assault, drug possession, and misdemeanor cases, in the D/FW area. I have attended court for pretrial motions, including evidence suppression hearings, in state and federal court, and have participated in appeals. For example, in one case in federal court, Dallas Division, the U.S. attorney appealed the trial court's rulings, which were affirmed by the Fifth Circuit Court of Appeals, in 912 F.2d 1466.

. . . .

17.   Did counsel request a *Daubert* hearing prior to Michelle Schuback's or Dan Powers' testimony? If not, why [not]?

No. It was not necessary in this case.

18.   In counsel's experience, would the trial court have excluded some or all of Schuback's or Powers' testimonies regarding the reliability of their statement?

This question is ambiguous. In my experience, I think the trial court would have permitted Ms. Schuback's and Mr. Powers' testimony to be admitted, as expert witnesses, because it was stipulated as to their expertise, and neither witness was alleged to be unreliable or to give false statements. I did object to the expert witness testimony as it was elicited, but do not believe the witnesses' reliability was at issue. In all my 30+ years' experience, I have been unable to foresee how a trial court might rule on evidence.

19.   Did counselor object during Schuback's or Powers' testimonies regarding the reliability of their testimonies? A. If not, why [not]?

Yes, I objected to their testimony as it was elicited, but not on the basis of reliability, because the reliability of their expertise and testimony was not an issue.

20.   In counsel's experience, would the trial court have excluded Schuback's or Powers' testimony had counsel objected?

I did object to Ms. Schuback's and Mr. Powers' testimony at trial. The trial court made its rulings, which I cannot second-guess.

(Dkt. #14-21, pp. 134, 137).

The state habeas court issued the following findings and conclusions concerning Petitioner's claim:

*Failure to Object to the Reliability of Expert Testimony*

75.  Applicant alleges that Counsel Medina was ineffective for failing to object to the reliability of the State's experts either by a contemporaneous objection or a *Daubert* hearing;

76.  Applicant relies on Gottlieb's affidavit to establish that all or at least some of Schuback's and Powers' testimonies would have been excluded if counsel would have shown that (a) the interview was not conducted in a scientifically reliable manner, (b) neither witness referred to any study validating the protocol followed by advocacy center, (c) leading and suggestive questions were used during the interview, (d) Schuback failed to explain what information was given prior to the interview and why interviewers should not be given that information, (e) there are no traumatic symptoms specifically associated with child abuse, (f) interviewers do not conduct standard mental health status evaluations, (g) there is no scientifically reliable way to determine if a child has been coached, (h) research shows that the majority of children report maltreatment without delay, (i) Powers' statements that kids often believe that it's their fault and guilt and shame is carried into adulthood was misleading, (j) scientific research has established that asking specific questions is not beneficial, and (k) there is no scientific data to support Powers' assertion that it was not uncommon for children to be abused in front of others;

77.  Counsel Medina worked for CPS in the Child Sexual Abuse division prior to becoming a lawyer;

78.  After Counsel [Medina] became a lawyer, he worked for CPS for nineteen years, eventually as a regional attorney for nineteen counties in North Texas;

79.  Counsel Medina has tried numerous felony cases, including sexual assault cases;

80.  In Counsel Medina's experience, he did not believe that either witnesses' testimony was unreliable or that it required a *Daubert* hearing to determine its reliability;

81.  In Counsel Medina's experience, counsel believed that the witnesses' expertise was not an issue;

28

82      Counsel Medina has vast experience in child sexual abuse cases and he based his decision not to object to the reliability of the State's experts either by a contemporaneous objection or a *Daubert* hearing request on that experience;

83.     Applicant has failed to establish by a preponderance of the evidence that counsel's decision was deficient;

84.     Applicant has failed to establish by a preponderance of the evidence that he was prejudiced by counsel's alleged failure to object to the reliability of Schuback and Powers' testimonies or to request a *Daubert* hearing;

85.     Gottlieb refers to a "scientifically validated protocol";

86.     Gottlieb fails to establish that such a protocol actually exists;

87.     Absent proof that such a protocol exists, Applicant has not shown by a preponderance of the evidence that counsel was deficient for failing to object to either testimony on these grounds;

88.     Gottlieb further claims that neither witness referred to any study validating the protocol followed by the advocacy center;

89.     Applicant has failed to show that in order to be admissible, a forensic interview must be scientifically validated;

90.     Neither witness left the jury with the impression that the protocol had been scientifically validated;

91.     Applicant has not shown by a preponderance of the evidence that counsel was deficient for failing to utilize an expert such as Gottlieb to elicit testimony regarding whether the protocol used by the advocacy center was scientifically reliable or that the outcome would have been different;

92.     Gottlieb makes a bare assertion that leading, close ended questions were used during the interview despite the fact that information should be elicited through open-ended questions;

93.     Gottlieb has failed to prove that that such a protocol is required;

94.     Absent a showing that this protocol exists, Applicant has failed to establish by a preponderance of the evidence that counsel was deficient or that the outcome of trial would have been different;

95.     Gottlieb claims that Schuback testified that she is given limited information but did not explain what information was given in this case;

96.    Although Schuback did not conduct the interview in this case, she did testify that forensic interviewers at the advocacy center are given the child's name, their age, and whether it is a sexual or physical abuse case, or if the interviewer needs to screen for everything. 4 RR 16;

97.    Schuback further testified that the interviewers like to have limited information to "prevent the interviewer from accidentally introducing information that the child has not already said." 4 RR 16-17;

98.    Applicant has not met his burden of proof by a preponderance of the evidence that counsel was deficient for failing to object to Schuback's testimony as a whole because she did not present evidence that she did, in fact, present to the jury or that the outcome would have been different;

99.    Gottlieb claims that there are no traumatic symptoms specifically associated with child abuse;

100.    There was no testimony that there were traumatic symptoms, only that Schuback screens for trauma to make a referral if needed;

101.    Applicant has failed to establish by a preponderance of the evidence that counsel was deficient failing to object to Schuback's testimony as a whole as scientifically unreliable based on this testimony or that the outcome of the trial would have been different;

102.    Gottlieb claims that Schuback implied that she was able to identify and diagnose symptoms of mental health disorders;

103.    Schuback's actual testimony was that she also looks "for any trauma that might be associated with what happened to that child so that we can make the appropriate referrals following the interview." 4 RR 14;

104.    Schuback never testified or left an impression with the jury that she was a mental health professional or that she was using the forensic interview as some type of diagnostic tool;

105.    Applicant has failed to establish by a preponderance of the evidence that counsel was deficient failing to object to Schuback's testimony as a whole as scientifically unreliable based on this testimony or that the outcome of the trial would have been different;

106.    Gottlieb also appears to claim that there is no scientifically valid way to determine whether a child has been coached;

107.  Schuback, as an expert, was allowed to rely on her expertise to determine whether or not she observed signs of coaching in this case;

108.  Gottlieb makes no claim as to how Schuback's experience in determining whether a child was coached was not reliable;

109.  Applicant has failed to establish by a preponderance of the evidence that counsel was deficient [for] failing to object to Schuback's testimony as a whole as scientifically unreliable based on this testimony or that the outcome of the trial would have been different;

110.  Gottlieb also attacks Schuback's testimony that outcries are often delayed;

111.  According to Gottlieb, "the majority of children report maltreatment without delay";

112.  In support of this statement, Gottlieb merely cites an entire book, without giving specific citations or quotations;

113.  An abstract of the book indicates that "the goal is to learn more about why children frequently remain silent about their abuse, deny it, or if they do disclose, do so belatedly and incompletely, often recanting their allegations over time." https://psycnet.apa.org/record/2007-06518-000 (last visited September 5, 2019);

114.  Schuback was free to rely on her experience as a forensic interviewer in forming her opinion;

115.  Applicant has failed to establish by a preponderance of the evidence that counsel was deficient [for] failing to object to Schuback's testimony as a whole as scientifically unreliable based on this testimony or that the outcome of the trial would have been different;

116.  Gottlieb also claims that Powers's testimony that kids often feel that the abuse was their fault and that children carry the guilt and shame into adulthood was misleading;

117.  Because another expert has a differing opinion, does not render an expert's testimony based on his own experience inadmissible;

118.  Applicant has failed to prove by a preponderance of the evidence that counsel was deficient for failing to object to this testimony or that the outcome of trial would have been different;

119.   Gottlieb claims that Powers ignored research regarding the use of open-
       ended questions and did not explain that the interview techniques were not
       scientifically reliable;

120.   Absent a showing that this protocol exists, Applicant has failed to establish
       by a preponderance of the evidence that counsel was deficient or that the
       outcome of trial would have been different;

121.   Gottlieb attacks Powers for failing to cite to studies supporting his
       testimony that . . . it is not uncommon to abuse a child in front of others;

122.   As an expert, Powers was free to base his testimony on his own experience;

123.   Gottlieb does not provide any information on how this failure to cite to
       studies affected Powers['] testimony or how the testimony would have been
       otherwise beneficial to Applicant;

124.   Applicant has failed to prove by a preponderance of the evidence that
       counsel was deficient for failing to object to this testimony or that the
       outcome of trial would have been different[.]

(Dkt. #14-23, pp. 161-69). The TCCA denied relief without written order, which was an

adjudication on the merits. *See Singleton*, 178 F.3d at 384.

A review of the record fails to show the state court's determination of this issue was in

conflict with established federal law or was objectively unreasonable, and nothing in the record

rebuts the presumption of factual correctness of the state court's findings with clear and convincing

evidence. Schuback and Power had the necessary education, training, and experience to testify as

they did. Indeed, Texas courts have allowed Schuback and Powers to testify as experts in other

cases involving child sex abuse. *See Werner v. Dir., TDCJ-CID*, No. 4:12CV12, 2015 WL

1387927, at *5 (E.D. Tex. Mar. 25, 2015); *Kimberlin v. State*, No. 05-18-00018-CR, 2019 WL

1292471 (Tex. App. Mar. 21, 2019); *Hassell v. State*, No. 05-10-00737-CR, 2012 WL 2353713

(Tex. App. June 21, 2012); *Olivera v. State*, No. 05-08-00527-CR, 2009 WL 3740781 (Tex. App.

Nov. 10, 2009); *Lively v. State*, No. 05-04-00267-CR, 2005 WL 1415241, at *1 (Tex. App. June

17, 2005). Trial counsel was not ineffective for failing to make this meritless objection as to

Shuback's and Powers' expertise. *See Emery*, 139 F.3d at 198. Furthermore, trial counsel's decision not to object to the reliability of Schuback's and Powers' testimony was based on his extensive experience handling criminal cases, including child sexual assault cases. *See Wilkerson v. Collins*, 350 F.2d 1054, 1065 (5th Cir. 1992) (when counsel makes a decision not to present evidence based on reasonable judgment and experience, he will not be characterized as being deficient).

Despite Schuback's and Powers' qualifications and expertise, Petitioner argues trial counsel should have objected to their testimony as unreliable because it was not based on any scientifically validated study. Under Texas law, for *scientific* evidence to be considered reliable, the underlying theory must be valid, the technique applying the theory must be valid, and the technique must be properly applied on the occasion in question. *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992). Factors relating to reliability include but are not limited to: (1) acceptance by the relevant scientific community; (2) qualifications of the expert; (3) literature concerning the technique; (4) the potential rate of error of the technique; (5) the availability of other experts to test and evaluate the technique; (6) the clarity with which the underlying theory or technique can be explained to the court; and (7) the experience and skill of the person applying the technique. *Id.* Depending upon the context, these specific factors may or may not apply to "soft science." *Nenno v. State*, 970 S.W.2d 549, 560 (Tex. Crim. App. 1998), *overruled on other grounds by State v. Terrazas*, 4 S.W.3d 720 (Tex. Crim. App. 1999). Texas courts have held, however, that "[w]hen addressing fields of study aside from the hard sciences, such as the social sciences or fields that are based primarily upon experience and training as opposed to the scientific method, *Kelly*'s requirement of reliability applies but with less rigor than to the hard sciences":

> To speak of the validity of a "theory" or "technique" in these fields may be roughly accurate but somewhat misleading. The appropriate questions are: (1) whether the

> field of expertise is a legitimate one, (2) whether the subject matter of the expert's testimony is within the scope of that field, and (3) whether the expert's testimony properly relies upon and/or utilizes the principles involved in the field. These questions are merely an appropriately tailored translation of the *Kelly* test to areas outside of hard science. And, hard science methods of validation, such as assessing the potential rate of error or subjecting a theory to peer review, may often be inappropriate for testing the reliability of fields of expertise outside the hard sciences.

*Nenno*, 970 S.W.2d at 561; *see also Puderbaugh v. State*, 31 S.W.3d 683, 685-86 (Tex. App. 2000);

*Lively*, No. 05-04-00267-CR, 2005 WL 1415241, at *1. Thus, beyond Petitioner's failure to cite

any scientific evidence or study calling into question the reliability of the State's experts'

testimony, Texas law does not require "hard science methods of validation" to show the experts'

testimony is reliable. As such, trial counsel's decision not to object to the reliability of the experts'

testimony based on a lack of scientific study was not deficient performance.

Finally, Petitioner fails to demonstrate there was a reasonable probability that, but for trial

counsel's failure to object to the reliability of Schuback's and Powers' testimony, the outcome of

the trial would have been different. Even assuming the trial court would have sustained objections

to the reliability of Schuback's and Powers' testimony, the victim's testimony alone was sufficient

to convict Petitioner. *See Guzman*, No. 05-16-00528-CR, 2017 WL 5663611, at *2 (Dkt. #14-1, p.

4). Thus, Petitioner cannot demonstrate prejudice. Having not shown deficient performance or

prejudice under *Strickland*, the state court's denial of this claim was not contrary to, or an

unreasonable application of, federal law, and the claim should be denied. Petitioner has failed to

show there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98.

Therefore, Petitioner is not entitled to habeas relief on Ground Two, and the claim should be

denied.

b. *Failure to object to the State's expert's testimony regarding the victim's truthfulness (Ground Three)*

Petitioner also argues trial counsel provided ineffective assistance by failing to object to the State's expert witness (Schuback) expressing an opinion on the truthfulness of the victim. (Dkt. #1, p. 7; Dkt. #5, pp. 22-23).

As previously stated, Schuback testified she saw no indication the victim had been coached nor did she see signs of exaggeration or suggestiveness during the forensic interview. (Dkt. #14-15, pp. 35-36, 40, 66). Petitioner asserts trial counsel was ineffective for failing to object to this testimony because it "was an indirect comment on the [victim's] truthfulness and was therefore not admissible" and "directly bolstered the testimony of the [victim] and harmed Petitioner." (Dkt. #1, p. 7).

This claim was fully developed during the state habeas corpus proceeding. Counsel Medina's affidavit addressed the claim as follows:

21.    Did counsel object to Schuback's testimony explaining what coaching is and that if seen it is explored during the interview as improperly vouching for the victim's credibility? A. If not, why [not]?

This question is ambiguous and compound, and requires presumption of the request as to "improper" and "vouching". I brought up in *voir dire* and in opening statements to the jury the problems with expert witness testimony when expert witnesses do not have direct knowledge about factual matters at issue in the trial. I did object to Ms. Schuback's testimony about coaching. However, Ms. Schuback's explanation of coaching was in her role as an expert witness, which may involve hearsay and opinion, and was part of her testimony describing the forensic interview process. I cannot comment on whether the jury perceived her testimony as "vouching" for either the victim or the Applicant as it calls for speculation into conclusions the jury reached after considering the evidence at trial.

22.    Did counsel object to Schuback's testimony regarding whether [s]he saw signs of suggestiveness during the forensic interview as improperly vouching for the victim's credibility? A. If not, why not?

This question is ambiguous and compound, and requires presumption of the request as to "improper" and "vouching". I brought up in *voir dire* and in opening statements to the jury the problems with expert witness testimony when expert witnesses do not have direct knowledge about factual matters at issue in the trial. I did object to Ms. Schuback's testimony about "signs of suggestiveness" which is not a technical term or one capable of being contradicted. However, Schuback's testimony was as an expert witness, which may involve hearsay and opinion, and she was describing what occurs during a forensic interview. I cannot comment on whether the jury perceived her testimony as "vouching" for either the victim or the Applicant as it calls for speculation into conclusions the jury reached after considering the evidence at trial.

(Dkt. #14-21, pp. 137-38). The state habeas court issued the following findings and conclusions concerning Petitioner's claim:

*Failure to Object to Testimony Regarding the Victim's Truthfulness*

125.    Applicant alleges that counsel was ineffective for failing to object to Schuback's testimony . . . regarding what coaching is and that she saw no evidence of suggestiveness or influence during the interview;

126.    According to Applicant, this testimony was inadmissible because it was a back-door comment on the victim's truthfulness;

127.    This . . . testimony is not considered to be a comment on the victim's truthfulness. *See Schutz v. State*, 957 S.W.2d 52, 73 (Tex. Crim. App. 1997) (social worker's testimony that victim did not exhibit signs of manipulation did not constitute a direct comment on the truth the victim's statements);

128.    Any objection that Schuback's testimony was an improper comment on the victim's truthfulness would have been meritless;

129.    Applicant has failed to establish by a preponderance of the evidence that counsel was deficient for failing to make such an objection and that the outcome of trial would have been different had counsel make the objection[.]

(Dkt. #14-23, p. 170). The TCCA denied relief without written order, which was an adjudication on the merits. *See Singleton*, 178 F.3d at 384.

A review of the record fails to show the state court's determination of this issue was in conflict with established federal law or was objectively unreasonable, and nothing in the record

36

rebuts the presumption of factual correctness of the state court's findings with clear and convincing evidence. While an expert's testimony that a child witness is truthful is inadmissible under Texas Rule of Evidence 702, an expert's opinion on signs of coaching or manipulation may assist the trier of fact and may therefore be admissible. *See, e.g.*, *Schutz v. State*, 957 S.W.2d 52, 73 (Tex. Crim. App. 1997) (social worker's testimony that victim did not exhibit signs of manipulation did not constitute a direct comment on the truth the victim's statements); *Granados v. State*, No. 05-17-01301-CR, 2019 WL 1349510, at *1 (Tex. App. Mar. 26, 2019) (the trial court did not abuse its discretion by allowing an expert witness to testify she did not see "red flags" indicating coaching and lying when she interviewed the complainants); *Munoz v. State*, No. 05-16-00153-CR, 2017 WL 1684633, at *3 (Tex. App. May 2, 2017) (trial court did not abuse its discretion by overruling objection to a clinical therapist's testimony that therapy sessions did not raise any "red flags" she was trained to look for when determining whether a complainant was lying or exaggerating); *Rangel v. State*, No. 05-15-00609-CR, 2016 WL 3031378, at *2 (Tex. App. May 19, 2016) (forensic interviewer testifying she did not see "red flags" that a complainant had been manipulated or coached was not a direct comment about the complainant's truthfulness); *Vasquez v. State*, No. 05-11-01096-CR; 2012 WL 3125171, at *4 (Tex. App. Aug. 2, 2012) (trial court did not abuse its discretion by overruling appellant's objection and allowing forensic interviewer to answer question about whether she observed "red flags"). Schuback did not testify that the victim was truthful in her forensic interview and did not testify "whether or not [the sexual abuse] did happen or not." (Dkt. #14-15, p. 56).

Based on the Texas courts' precedent, there was nothing deficient in trial counsel's decision not to object to Schuback's testimony that there was no indication the victim had been coached and there were no signs of exaggeration or suggestiveness during the forensic interview.

Indeed, had counsel objected to Schuback's testimony on the basis that it was an improper comment on the victim's truthfulness, the objection likely would have been overruled. Trial counsel was not ineffective for failing to make this meritless objection. *See Emery*, 139 F.3d at 198. Having not shown deficient performance or prejudice, the state court's denial of this claim was not contrary to, or an unreasonable application of, federal law. Petitioner has failed to show there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98. Therefore, Petitioner is not entitled to habeas relief on Ground Three, and the claim should be denied.

### c. *Failure to object to hearsay from Jamie Shell (Ground Five)*

Petitioner further claims trial counsel provided ineffective assistance by failing to object to several instances of hearsay from the State's witness, Jamie Shell. (Dkt. #1, p. 8).

Shell worked as a case worker for LifePath Systems, which is a community mental health facility in Collin County. (Dkt. #14-14, p. 119). On direct examination, Shell testified she met with the victim and her grandmother "to gather information for a CPS report." (Dkt. #14-14, p. 120). Before Shell met with the victim, the victim had met with the child psychiatrist, Dr. Essa, for a psychiatric evaluation. (Dkt. #14-14, p. 120). Shell testified that based on what she heard from Dr. Essa and the victim, she made a referral to CPS. (Dkt. #14-14, p. 121). Shell further testified the victim gave enough detail so she could make the CPS report. (Dkt. #14-14, p. 122). On cross-examination, trial counsel elicited testimony that the victim and her grandmother reported the sexual abuse to Dr. Essa who then relayed the specific information to Shell. (Dkt. #14-14, p. 125). Shell testified she offered resources to the victim and her grandmother through the Collin County Child Advocacy Center for special treatment for abuse and trauma. (Dkt. #14-14, p. 125). On redirect, Shell clarified the victim made the initial outcry to Dr. Essa and then the victim and her grandmother reported the sexual abuse to Shell. (Dkt. #14-14, pp.132-33).

Petitioner contends Shell's testimony "was designed to tell the jury that the [victim] reported being sexually abused," and trial counsel was ineffective for failing to object to, and for eliciting, this hearsay testimony. (Dkt. #1, p. 8). This claim was fully developed during the state habeas corpus proceeding. Counsel Medina's affidavit addressed the claim as follows:

25.     Did counsel object to Jaime[3] Shell's testimony regarding whether she reported the victim's accusation to CPS as hearsay? A. If no, why [not]?

No. Whether or not the witness made a report to a governmental agency is not hearsay.

26.     Did counsel object to Shell's testimony regarding who made the report of sexual abuse as hearsay? A. If no, why [not]?

No. Identification of the person who made a report to a governmental agency is not hearsay.

27.     Did counsel elicit testimony from Shell about whether it was clear to her that there was a report of sexual abuse? A. If so, what was counsel's strategy in eliciting this testimony?

I do not recall asking questions to elicit testimony as described in this question no. 27. Although I have requested a copy of the Reporter's Record from the Applicant's appellate counsel, I have not yet received it, and accordingly, seek protection and guidance from the Court as to clarification of this question no. 27, and supplementation of my response to this question.[4]

28.     Did Counsel elicit testimony from Shell about who reported the sexual abuse? A. If so, what was counsel's strategy in eliciting this testimony?

I do not recall asking questions to elicit testimony as described in this question no. 28, amon[g] other reasons, because those who report sexual abuse of children are protected by confidentiality. Although I have requested a copy of the Reporter's Record from the Applicant's appellate counsel, I have not yet received it, and accordingly, seek protection and guidance from the Court as to clarification of this question no. 28, and supplementation of my response to this question.

---

[3] The trial transcript spells Shell's first name "Jamie" while the state habeas court spells it "Jaime." Regardless of the correct spelling of Shell's fist name, the Court understands "Jamie Shell" and "Jaime Shell" are the same individual.

[4] Counsel Medina did not file a second supplemental affidavit in response to the allegations in the application for writ of habeas corpus. (Dkt. #14-23, p. 153, ¶ 16).

(Dkt. #14-23, pp. 138-39).

The state habeas court issued the following findings and conclusions concerning Petitioner's claim:

*Failure to Object to Hearsay*

136.    Applicant claims that his trial counsel was ineffective for failing to object to what he claims were several instances of hearsay;

137.    Jaime Shell works for LifePath, a mental health facility in Collin County where the victim sought treatment;

138.    Applicant alleges that counsel should have objected to Shell's testimony that based on what she heard from the victim and the doctor at LifePath, she made a CPS referral;

139.    Applicant further alleges that counsel was ineffective for eliciting testimony from Shell that the victim and her grandmother reported the abuse, and opening the door to further testimony on redirect that [] the victim made the initial outcry to the doctor;

140.    Counsel Medina did not object to Shell's testimony because the testimony that she made a CPS referral was not hearsay and because her testimony about who disclosed the abuse was not hearsay;

141.    Shell did not testify as to any out-of-court statement made by the victim or her grandmother;

142.    Counsel had a valid legal strategy for asking Shell about who disclosed the abuse because this went in line with the theory that the grandmother relied on others to report the abuse;

143.    Counsel had a valid legal strategy for not objecting to Shell's testimony and for eliciting testimony regarding who disclosed the abuse;

144.    Applicant has failed to prove by a preponderance of the evidence that counsel's strategy was deficient and that the outcome would have been different had counsel objected[.]

(Dkt. #14-23, pp. 172-73). The TCCA denied relief without written order, which was an adjudication on the merits. *See Singleton*, 178 F.3d at 384.

A review of the record fails to show the state court's determination of this issue was in conflict with established federal law or was objectively unreasonable, and nothing in the record rebuts the presumption of factual correctness of the state court's findings with clear and convincing evidence. Shell's testimony about who reported the sexual abuse did not recount the substance of the victim's outcry and was not offered to prove the truth of the matter asserted. *See* Tex. R. Evid. 801(d) (hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted). Similarly, Shell's testimony that she made a referral to CPS based on what she heard from Dr. Essa and the victim did not recount the substance of the victim's outcry and was not offered to prove the truth of the matter asserted. *See* Tex. R. Evid. 801(d). Because the complained-of-statements were not hearsay, trial counsel was not ineffective for failing to object. *See Emery*, 139 F.3d at 198 (counsel is not ineffective for failing to make a meritless objection). Furthermore, Petitioner fails to overcome the presumption trial counsel had a valid legal strategy for asking Shell on cross-examination about who disclosed the abuse. The testimony aligned with the defense theory that the victim's grandmother relied on others to report the abuse. (Dkt. #14-14, pp. 98-101).

Moreover, even if trial counsel's failure to object to Shell's testimony rendered his performance deficient, Petitioner fails to establish the existence of prejudice because the victim testified about reporting the abuse to Dr. Essa at LifePath. (Dkt. #14-15, pp. 127-28). *See Woodfox v. Cain*, 609 F.3d 774, 816-17 (5th Cir. 2010) (no prejudice from failure to object to hearsay when hearsay evidence was cumulative to other evidence on the same point). In the absence of prejudice, Petitioner cannot show ineffective assistance of counsel on this ground. Having not shown deficient performance or prejudice, the state court's denial of this claim was not contrary to, or an unreasonable application of, federal law. Petitioner has failed to show there was no reasonable

basis for the state court to deny relief. *Richter*, 562 U.S. at 98. Therefore, Petitioner is not entitled to habeas relief on Ground Five, and the claim should be denied.

### d.  Failure to object to hearsay from Kristina McClain (Ground Six)

Petitioner next asserts trial counsel provided ineffective assistance by failing to object to, or by eliciting, "back door" hearsay from the State's witness, Plano Police Detective Kristina McClain.

The State called McClain to testify at Petitioner's trial. (Dkt. #14-14, p. 137). McClain testified she worked on child abuse cases in the family violence unit of the Plano Police Department and had special training in child abuse and sexual abuse. (Dkt. #14-14, pp. 137-38). McClain testified she arranged to have the victim forensically interviewed and watched the interview on closed circuit television from another room. (Dkt. #14-14, pp. 139-40). McClaim testified she obtained a warrant for Petitioner's arrest after watching the interview. (Dkt. #14-14, p. 141). On cross-examination, McClain testified she "was pretty sure" all the elements of the offense were "covered" in the victim's initial interview. (Dkt. #14-14, pp. 148-49).

Petitioner argues this testimony "was clearly designed to tell the jury that the complainant reported being sexually abused by Petitioner in the forensic interview," and trial counsel was ineffective for failing to object to this "'back door' hearsay." (Dkt. #1, p. 8). This claim was fully developed during the state habeas corpus proceeding. Counsel Medina's affidavit addressed the claim as follows:

> 29.    Did counsel object on hearsay grounds to Detective Kristina McClain's testimony that after she arranged for and watched the victim's forensic interview, she obtained an arrest warrant? A. If not, why [not]?
>
> This question is ambiguous and compound. I objected to Detective McClain's testimony; however, her testimony about why she obtained an arrest warrant is not hearsay.

30. Did counsel elicit testimony that Detective McClain believed that all the elements of the offense were covered in the initial interview? A. If so, why?

No.

(Dkt. #14-21, p. 139).

The state habeas court issued the following findings and conclusions concerning Petitioner's claim:

145. Applicant also alleges that counsel was ineffective for failing to object to the detective's testimony that she got an arrest warrant after watching the forensic interview;

146. Applicant seems to further allege that counsel was ineffective for eliciting testimony from the detective that to get a warrant or to file, all of the elements of the offense would need to be covered;

147. Counsel Medina [stated] he did not object to Detective McClain's testimony that she got an arrest warrant after watching the forensic interview because it was not hearsay;

148. The detective did not testify as to any out of court statement;

149. Although in his affidavit Counsel Medina claims that he did not elicit testimony from the detective that she believed that all of the elements of the offense were covered in the victim's initial interview, counsel did elicit this testimony;

150. Counsel was attempting to establish that in order to get an arrest warrant she should believe that all elements were met in this case, but she was not relying on her own investigation or first-hand knowledge, only having watched a video of someone else interviewing the victim;

151. Counsel had a valid legal strategy for eliciting this testimony;

152. Counsel had a valid legal strategy for not objecting to McClain's testimony;

153. Applicant has failed to prove by a preponderance of the evidence that counsel's strategy was deficient and that the outcome would have been different had counsel objected[.]

(Dkt. #14-23, pp. 173-74). The TCCA denied relief without written order, which was an adjudication on the merits. *See Singleton*, 178 F.3d at 384.

43

A review of the record fails to show the state court's determination of this issue was in conflict with established federal law or was objectively unreasonable, and nothing in the record rebuts the presumption of factual correctness of the state court's findings with clear and convincing evidence. McClain's testimony that she obtained a warrant for Petitioner's arrest after watching the interview was not testimony about an out-of-court statement offered to prove the truth of the matter asserted. *See* Tex. R. Evid. 801(d). Because the complained-of-statements were not hearsay, trial counsel was not ineffective for failing to object. *See Emery*, 139 F.3d at 198 (counsel is not ineffective for failing to make a meritless objection). Furthermore, although a police officer's testimony may be inadmissible due to hearsay, an officer may describe statements made by others for the purpose of showing why the defendant became a suspect and to explain the events and circumstances leading to the defendant's arrest. *See Lacaze v. State*, 346 S.W.3d 113, 120 (Tex. App. 2011). Additionally, Petitioner fails to overcome the presumption trial counsel had a valid legal strategy for eliciting testimony that McClain believed all the elements of the offense were covered in the victim's initial interview. A review of the cross-examination in its entirety indicates trial counsel was attempting to highlight that, in order to get an arrest warrant, McClain should believe all elements of the offense were met, but in this case, McClain was not relying on her own investigation or first-hand knowledge of the events, but only on having watched a video of someone else interviewing the victim.

Moreover, even assuming the jury interpreted McClain's testimony to be that the victim "reported being sexually abused by Petitioner in the forensic interview" (Dkt. #1, p. 8) and trial counsel rendered deficient performance by allowing McClain's testimony, Petitioner fails to establish the existence of prejudice because the victim testified that she told the forensic interviewer that Petitioner sexually abused her (Dkt. #14-15, pp. 128-30). *See Woodfox*, 609 F.3d

44

at 816-17 (no prejudice from failure to object to hearsay when hearsay evidence was cumulative to other evidence on the same point). Having not shown deficient performance or prejudice, the state court's denial of this claim was not contrary to, or an unreasonable application of, federal law. Petitioner has failed to show there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98. Therefore, Petitioner is not entitled to habeas relief on Ground Six, and the claim should be denied.

> e.  *Failure to object to hearsay from Michelle Shuback (Ground Seven)*

Petitioner next contends trial counsel provided ineffective assistance by failing to object to several instances of hearsay from the State's witness, Michelle Schuback. (Dkt. #1, pp. 8-9).

As previously discussed, the State called Schuback, the director of case management at the Children's Advocacy Center, as an expert on how forensic interviews are conducted. *Guzman*, 2017 WL 5663611, at *2 (Dkt. #14-1, p. 4). Schuback testified generally about forensic interviews and then testified specifically about the victim's interview, including that the victim outcried and was able to describe the abuse, to offer a detailed and consistent narrative, to provide sensory details, to identify her abuser, to describe the abuser's behavior "during the different incidents of abuse"; and to use gestures to describe what happened, including gesturing down the side of her body before disclosing, or gesturing to, "the private parts of her body that were touched." (Dkt. #14-15, pp. 14-50, 67).

Petitioner argues this testimony was offered to tell the jury "what the victim claimed Petitioner did to her" and was offered through a witness who did not conduct the interview of the victim. (Dkt. #1, p. 9). This claim was fully developed during the state habeas corpus proceeding. Counsel Medina's affidavit addressed the claim as follows:

31.    Did Counsel object to Michelle Schuback's testimony that the victim "outcried" as hearsay[?] A. If not, why [not]?

No. An outcry is not hearsay.

32.    Did counsel object on hearsay grounds to Schuback's testimony that the victim was able to describe the abuse? A. If not, why [ not]?

Yes, I objected to Ms. Schuback's testimony. However, her testimony about what the victim could do or could not do is not hearsay.

33.    Did counsel object on hearsay grounds to Schuback's testimony that the victim was detailed and consistent, able to give sensory detail, and able to say who the assailant was? A. If not, why [not]?

Yes, I objected to Ms. Schuback's testimony. However, her testimony on the victim's demeanor and memory recall what the victim could do or could not do is not hearsay and is within the scope of her expert opinion.

34.    Did Counsel object on hearsay grounds to Schuback's testimony that the victim used gestures to show where she was touched? A. If not, why [not]?

Yes, I objected to Ms. Schuback's testimony. However, her testimony about a victim's gestures, without more, is not hearsay, and within the scope of her expert opinion.

35.    Did counsel object on hearsay grounds to Schuback's testimony that there was no indication that the victim was coached? A. If not, why [not]?

Yes, I objected to Ms. Schuback's testimony. However, her testimony described in this question no. 35 is not hearsay and is within the scope of her expert opinion.

36.    Did counsel object on hearsay grounds to Schuback's testimony that the victim talked about her side being touched and about her private area being touched? A. If not, why [not]?

Yes, I objected to Ms. Schuback's testimony. However, her testimony described in this question no. 36 is not hearsay and is within the scope of her expert opinion.

37.    Did counsel object on hearsay grounds to Schuback's testimony that she did not see signs of suggestiveness? A. If not, why [not]?

Yes, I objected to Ms. Schuback's testimony. However, her testimony described in this question no. 37 involves Ms. Schuback's observation, is not hearsay, and is within the scope of her expert opinion.

(Dkt. #14-21 pp. 139-40).

The state habeas court issued the following findings and conclusions concerning Petitioner's claim:

154.    Applicant alleges that counsel was ineffective for failing to object [to] Schuback's testimony that the victim "outcried" during her forensic interview, that the victim was able to describe the abuse, that the victim was detailed and consistent, that she used gestures and that she was not coached on the grounds of hearsay.

155.    Counsel Medina responds [he] did not object because none of these statements constituted hearsay;

156.    Schuback did not testify as to any out-of-court statement made by the victim;

157.    To the extent that Schuback testified on redirect regarding the victim gesturing down her side and that the victim talked about the private parts that were touched, this was made in response to Counsel Medina's line of questioning indicating that the victim had gestured down her side 5 times before then indicating that a private part had been touched;

158.    Applicant does not contend that counsel was ineffective for opening the door to further testimony to establish that Schuback did not believe that those behaviors indicated that the forensic interviewer had improperly influenced the victim;

159.    Counsel had a valid legal strategy for not objecting to Schuback's testimony. Applicant has failed to prove by a preponderance of the evidence that counsel's strategy was deficient and that the outcome would have been different had counsel objected[.]

(Dkt. #14-23, pp. 174-75). The TCCA denied relief without written order, which was an adjudication on the merits. *See Singleton*, 178 F.3d at 384.

A review of the record fails to show the state court's determination of this issue was in conflict with established federal law or was objectively unreasonable, and nothing in the record

rebuts the presumption of factual correctness of the state court's findings with clear and convincing evidence. None of the testimony Petitioner complains of is testimony as to an out-of-court statement made by the victim. *See* Tex. R. Evid. 801(d). Because the statements Petitioner complains of were not hearsay, trial counsel was not ineffective for failing to object. *See Emery*, 139 F.3d at 198 (counsel is not ineffective for failing to make a meritless objection). Furthermore, to the extent Schuback testified on redirect regarding the victim gesturing down her side and talking about her private parts that were touched, this testimony was made in response to trial counsel's line of questioning on cross-examination indicating the victim had gestured down her side five times before disclosing a private part had been touched. (Dkt. #14-15, pp. 49-50). Petitioner fails to overcome the presumption trial counsel had a valid legal strategy for opening the door to this testimony—specifically, on cross-examination, trial counsel was attempting to establish the victim's behaviors indicated the forensic interviewer had improperly influenced the victim.

Moreover, even assuming Schuback's testimony was "offered to tell the jury what [the victim] claimed Petitioner did to her" (Dkt. #1, p. 9) and trial counsel rendered deficient performance by allowing Schuback's testimony, Petitioner fails to establish the existence of prejudice because the victim testified that Petitioner sexually abused her and described the abuse (*See generally* Dkt. #14-15, pp. 79-132). *See Woodfox*, 609 F.3d at 816-17 (no prejudice from failure to object to hearsay when hearsay evidence was cumulative to other evidence on the same point). Having not shown deficient performance or prejudice, the state court's denial of this claim was not contrary to, or an unreasonable application of, federal law. Petitioner has failed to show there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98. Therefore, Petitioner is not entitled to habeas relief on Ground Seven, and the claim should be denied.

*f. Failure to object to hearsay from Dan Powers (Ground Eight)*

Petitioner argues trial counsel provided ineffective assistance by failing to object to several instances of hearsay from the State's witness, Dan Powers. (Dkt. #1, p. 9).

As previously discussed, the State called Powers, the clinical director of the Children's Advocacy Center of Collin County, to testify at trial. Powers testified the forensic interview was conducted properly—specifically, there was no sign of leading or suggestiveness by the interviewer—and the victim was able to provide sensory and chronological details and a consistent narrative. (Dkt. #14-15, pp. 198-99). Powers also testified it was "not surprising" the victim was hesitant to talk about anal touching and penetration. (Dkt. #14-15, p. 199).

Petitioner asserts this testimony "was offered solely to tell the jury that the complainant said she was sexually abused by Petitioner in her forensic interview." (Dkt. #1, p. 9). This claim was fully developed during the state habeas corpus proceeding. Counsel Medina's affidavit addressed the claim as follows:

> 38. Did counsel object on hearsay grounds to Dan Powers' testimony that he reviewed the forensic interview and that it was done properly? A. If not, why [not]?
>
> This question is ambiguous and compound. Yes, I objected to Mr. Powers' testimony. However, his testimony that he reviewed materials is not hearsay, and it was his expert opinion as to how the interview was conducted.
>
> 39. Did counsel object on hearsay grounds to Powers' testimony that the victim was able to give general, sensory, and chronological details during her forensic interview? A. If not, why?
>
> This question is ambiguous and compound. Yes, I objected to Mr. Powers' testimony. However, his testimony described in this question no. 39 are his observations and his expert opinion.
>
> 40. Did counsel object on hearsay grounds to Powers' testimony that the victim was consent in the provided information? A. If not, why [not]?

> This question is ambiguous and compound. Yes, I objected to Mr. Powers' testimony, but I do not understand the description of the testimony in this question no. 40 "that the victim was consent in the provided information", and reserve further response after clarification from the Court.

> 41.    Did counsel object on hearsay grounds to Powers' testimony that it was not surprising that the victim was hesitant to talk about anal penetration? A. If not, why [not]?

> This question is ambiguous and compound. Yes, I objected to Mr. Powers' testimony. However, his testimony described in this question no. 41 are his observations and his expert opinion.

(Dkt. #14-23, pp. 140-41).

The state habeas court issued the following findings and conclusions concerning Petitioner's claim:

> 160.    Applicant alleges that counsel was ineffective for failing to object to Dan Powers' testimony that the victim gave good details in the interview, that the victim was consistent in the information she provided, and that it was not surprising that the victim was hesitant to talk about anal penetration;

> 161.    Counsel Medina did not object because none of these statements constituted hearsay;

> 162.    Powers did not testify as to any out-of-court statement made by the victim[.]

(Dkt. #14-23, pp. 175-76). The TCCA denied relief without written order, which was an adjudication on the merits. *See Singleton*, 178 F.3d at 384.

A review of the record fails to show the state court's determination of this issue was in conflict with established federal law or was objectively unreasonable, and nothing in the record rebuts the presumption of factual correctness of the state court's findings with clear and convincing evidence. None of the complained-of-testimony is testimony as to an out-of-court statement made by the victim. *See* Tex. R. Evid. 801(d). Because the testimony was not hearsay, trial counsel was not ineffective for failing to object. *See Emery*, 139 F.3d at 198 (counsel is not ineffective for failing to make a meritless objection). Moreover, even assuming Powers' testimony "was offered

solely to tell the jury that the [victim] said she was sexually abused by Petitioner in her forensic interview" (Dkt. #1, p. 9) and trial counsel rendered deficient performance by allowing Powers' testimony, Petitioner fails to establish the existence of prejudice because the victim testified that she told the forensic interviewer Petitioner sexually abused her (Dkt. #14-15, pp. 128-30). *See Woodfox*, 609 F.3d at 816-17 (no prejudice from failure to object to hearsay when hearsay evidence was cumulative to other evidence on the same point). Having not shown deficient performance or prejudice, the state court's denial of this claim was not contrary to, or an unreasonable application of, federal law. Petitioner has failed to show there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98. Therefore, Petitioner is not entitled to habeas relief on Ground Eight, and the claim should be denied.

### g. *Failure to object to the State's Closing Argument (Ground Nine)*

Petitioner further contends trial counsel provided ineffective assistance by failing to object to the prosecutor attacking Petitioner "over the shoulders of his attorney"[5] during closing argument. (Dkt. #1, p. 9).

During the State's closing argument on guilt/innocence, the prosecutor argued defense counsel "has been trying to fool you with smoke and mirrors from the very beginning trying to misrepresent evidence to you that we then had to come back around and clear up." (Dkt. #14-16, p. 30). The prosecutor further argued defense counsel "tried to fool you when he was talking to Maria [the victim's grandmother], and he was changing what she was saying and trying to confuse her about when things happened." (Dkt. #14-16, p. 31). The prosecutor also asserted defense counsel "tried to confuse [the victim] about several incidents." (Dkt. #14-16, p. 31).

---

[5] In Texas, "[w]hen a prosecutor makes uninvited and unsubstantiated accusations of improper conduct directed toward a defendant's attorney, in an attempt to prejudice the jury against the defendant, courts refer to this as striking a defendant over the shoulders of his counsel." *Phillips v. State*, 130 S.W.3d 343, 355 (Tex. App. 2004); *see also Cartwright v. Dretke*, 103 F. App'x 545, 548 (5th Cir. 2004).

Petitioner asserts these attacks "over the shoulders of his attorney" were improper and harmful to Petitioner. (Dkt. #1, p. 9). This claim was fully developed during the state habeas corpus proceeding. Counsel Medina's affidavit addressed the claim as follows:

> 42.    Did counsel object to the State's argument that counsel was trying to fool the jury with "smoke and mirrors" as striking Applicant over the shoulder of trial counsel? A. If not, why [not]?
>
> This question is ambiguous and compound. I do not understand what is being asked in this question no. 42. It is not usual in a trial to object to the opening or closing arguments of counsel, as contrasted with objecting to evidentiary matters. I reserve further response to this question after clarification from the Court.
>
> 43.    Did counsel object to the State's argument that counsel had tried to "fool" the jury during his cross-examination of the victim's grandmother as striking Applicant over the shoulder of trial counsel? A. If not, why [not]?
>
> This question is ambiguous and compound. I do not understand what is being asked in this question no. 43. It is not usual in a trial court proceeding to object to opening or closing arguments of counsel, as contrasted with objecting to evidentiary matters. I reserve further response to this question after clarification from the Court.
>
> 44.    Did Counsel object to the Stat's argument that counsel tried to confuse the victim as striking Applicant over the shoulder of trial counsel? A. If not, why?
>
> This question is ambiguous and compound. I do not understand what is being asked in this question no. 44. It is not usual in a trial court proceeding to object to opening or closing arguments of counsel, as contrasted with objecting to evidentiary matters. I reserve further response to this question after clarification from the Court.

(Dkt. #14-21, pp. 141-42).

The state habeas court issued the following findings and conclusions concerning Petitioner's claim:

*Failure to Object to the State's Closing Argument*

163.   Applicant alleges that trial counsel was ineffective for failing to object to the State's closing arguments on the grounds that it was striking at Applicant over the shoulder of his counsel;

164.   A prosecutor improperly strikes at the defendant over the shoulder of counsel when the argument is made in terms of defense counsel personally and when the argument explicitly attacks defense counsel's character. *Brown v. State*, 270 S.W.3d 564, 572 (Tex. Crim. App. 2008);

165.   Applicant contends that the State's arguments that counsel "has been trying to fool you with smoke and mirrors form the very beginning trying to misrepresent evidence to you that we then had to come back around and clear up;" "tried to fool you when he was talking to Maria, and he was changing what she was saying and trying to confuse her about when things happened;" and "tried to confuse [the victim] about several incidents" was an attack on trial counsel personally and should have been objected to by counsel;

166.   Counsel Medina states that it is not usual to object to closing arguments;

167.   The State's arguments did not rise to the level of a personal attack on trial counsel or his character;

168.   The argument merely pointed out trial counsel's strategy in this case and asked the jury to consider that strategy;

169.   Counsel had a valid legal strategy not to object to the State's argument;

170.   Any objection to the State's argument would have been meritless;

171.   Applicant has failed to prove by a preponderance of the evidence that counsel was deficient and that the outcome of the proceeding would have been different[.]

(Dkt. #14-23, pp. 176-77). The TCCA denied relief without written order, which was an adjudication on the merits. *See Singleton*, 178 F.3d at 384.

Under Texas law, proper closing arguments may discuss the following: (1) summary of the evidence; (2) reasonable deductions from the evidence; (3) response to opposing counsel's argument; and (4) pleas for law enforcement. *See Jackson v. State*, 17 S.W.3d 664, 673 (Tex. Crim.

App. 2000). The State may not use closing argument to strike at a defendant over the shoulders of his counsel or accuse that counsel of bad faith. *Fuentes v. State*, 664 S.W.2d 333, 335 (Tex. Crim. App. 1984). Failing to object to the opposing counsel's jury argument in order to not risk antagonizing the jury by objecting is a matter of trial strategy. *See Wiley v. Puckett*, 969 F.2d 86, 102 (5th Cir. 1992).

A review of the record fails to show the state court's determination of this issue was in conflict with established federal law or was objectively unreasonable, and nothing in the record rebuts the presumption of factual correctness of the state court's findings with clear and convincing evidence. All the complained-of-arguments were presented on the State's rebuttal closing argument in response to trial counsel's closing argument. The prosecutor's statements did not accuse defense counsel of improper conduct; rather, the statements were responsive to defense counsel's closing argument and trial strategy and were an attempt to refocus the jury's attention on the testimony of the State's witnesses. Trial counsel's decision not to object to these statements as an attack on Petitioner "over the shoulders" of defense counsel was therefore reasonable, and trial counsel's performance was constitutionally adequate. *See Emery*, 139 F.3d at 198 (trial counsel was not ineffective for failing to make meritless objections).

Furthermore, trial counsel objected to the prosecutor's "smoke and mirrors" as a misstatement of evidence, and the trial court immediately instructed the jury:

> Well, ladies and gentlemen, understand this is argument. This is not evidence and if there's something that – I can't fill in for you what the evidence is. You have to use your own memories as to what it is, and if that's not the evidence, you're instructed to ignore it. That's in the charge.

(Dkt. #14-16, p. 30). The trial court cured any prejudice that may have resulted from the prosecutor's comments by instructing the jury not to consider statements by counsel as evidence. *See United States v. Mota*, 598 F.2d 995, 1000 (5th Cir. 1979) (holding that defendant was not

prejudiced where the trial court instructed the jury that the comments of counsel were not evidence and could not be considered as such). Having not shown deficient performance or prejudice, the state court's denial of this claim was not contrary to, or an unreasonable application of, federal law. Petitioner has failed to show there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98. Therefore, Petitioner is not entitled to habeas relief on Ground Nine, and the claim should be denied.

### 3. Eliciting Testimony Regarding Truthfulness of the Victim (Ground Four)

Petitioner asserts trial counsel provided ineffective assistance by eliciting testimony during cross-examination of the State's witness, Maria Galindez, that she believed the victim. (Dkt. #1, p. 7).

The State called the victim's grandmother, Maria Galindez, to testify at trial. During cross-examination of Galindez, trial counsel elicited testimony that Galindez believed the victim's sexual assault accusations as communicated to her by the LifePath doctor. (Dkt. #14-14, p. 99). Petitioner argues this testimony constituted an impermissible comment on the victim's truthfulness, which served only to bolster the victim's testimony. (Dkt. #1, p. 7). This claim was fully developed during the state habeas corpus proceeding. Counsel Medina addressed the issue in his affidavit as follows:

> 23.    Did counsel ask Maria Galindez if she believed the accusations as relayed to her by the doctor at LifePath? A. If so, what was counsel's strategy in asking her this question?
>
> Yes, to determine witness consistency and to narrow down what defenses would continue to be needed as trial continued.
>
> 24.    Did counsel ask Galindez if she would have called CPS or police had LifePath not responded the accusation? If so, what was counsel's strategy in asking her this question?
>
> Yes, for clarification of sequence of events.

(Dkt. #14-21, p. 138).

The state habeas court issued the following findings and conclusions concerning Petitioner's claim:

*Eliciting Testimony From Witness that She Believed the Victim*

130.  Applicant alleges that counsel was ineffective because he elicited testimony from the victim's grandmother that she believed the victim;

131.  According to Applicant this was inadmissible testimony that commented on the victim's credibility and that counsel could have no valid legal strategy for eliciting this testimony;

132.  Counsel's strategy during cross-examination of the victim's grandmother is clear when read in its entirety;

133.  The complained-of exchange occurred while counsel essentially asked the witness that if she believed the victim, why did she not report the allegations but left it to others to investigate and report. 3 RR 99-100;

134.  Counsel Medina . . . used his cross examination to narrow down the possible defenses available to Applicant;

135.  Applicant has failed to establish by a preponderance of the evidence that counsel's strategy was deficient or that the outcome of the trial would have been different had counsel chosen not to ask these questions of the grandmother[.]

(Dkt. #14-23, p. 171). The TCCA denied relief without written order, which was an adjudication on the merits. *See Singleton*, 178 F.3d at 384.

A review of the record fails to show the state court's determination of this issue was in conflict with established federal law or was objectively unreasonable, and nothing in the record rebuts the presumption of factual correctness of the state court's findings with clear and convincing evidence. Petitioner fails to overcome the presumption trial counsel had a valid legal strategy for eliciting the testimony with which Petitioner takes issue. A review of the cross-examination in its entirety indicates trial counsel was attempting to highlight that, if Galindez had in fact believed the victim's sexual assault allegations, she would have reported the allegations instead of relying

on others to investigate and report. Petitioner also fails to demonstrate that but for trial counsel's cross-examination of Galindez, the result of the trial would have been different. Having not shown deficient performance or prejudice, the state court's denial of this claim was not contrary to, or an unreasonable application of, federal law. Petitioner has failed to show there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98. Therefore, Petitioner is not entitled to habeas relief on Ground Nine, and the claim should be denied.

**B.  Punishment Phase Ineffective Assistance of Counsel Claims**

Petitioner asserts two claims of ineffective assistance during the penalty phase of Petitioner's trial.

In the state sentencing context, the relevant *Strickland* prejudice prong inquiry is whether, absent counsel's errors, there is a reasonable probability the defendant's sentence would have been "significantly less harsh," *Spriggs v. Collins*, 993 F.2d 85, 88-89 (5th Cir. 1993), taking into account "such factors as the defendant's actual sentence, the potential minimum and maximum sentences that could have been received, the placement of the actual sentence within the range of potential sentences, and any relevant mitigating or aggravating circumstances." *United States v. Segler*, 37 F.3d 1131, 1136 (5th Cir. 1994) (citing *Spriggs*, 993 F.2d at 88)[6]; *accord Dale v. Quarterman*, 553 F.3d 876, 880 (5th Cir. 2008).

---

[6] The *Spriggs* "significantly less harsh" standard applies here because the petitioner's habeas petition alleges ineffective assistance of counsel during a state sentencing hearing, not a federal one. *United States v. Grammas*, 376 F.3d 433, 438 & n.4 (5th Cir. 2004) (holding *Glover v. United States*, 531 U.S. 198, 203 (2001), which cites *Spriggs*, abrogates the significantly harsh test only in the federal sentencing context). *See also Dale v. Quarterman*, 553 F.3d 876, 880 n.2 (5th Cir. 2008).

### 1.  Failure to Call Character Witnesses (Ground Ten)

Petitioner argues trial counsel provided ineffective assistance by failing to call available character witnesses to testify at the punishment phase of Petitioner's trial. (Dkt. #1, pp. 9-10; Dkt. #5, pp. 28-31).

As previously stated, "complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy." *Buckelew*, 575 F.2d at 521. The presentation of witness testimony is essentially strategy and, thus, within the trial counsel's domain. *Alexander*, 775 F.2d at 602. A habeas petitioner must overcome a strong presumption counsel's decision in not calling a particular witness was a strategic one. *See Murray*, 736 F.2d at 282. In order for a petitioner to demonstrate the requisite *Strickland* prejudice, the petitioner must show not only that the witness would have testified at trial but also that this testimony would have been favorable. *Alexander*, 775 F.2d at 602 (citing *Boyd*, 661 F.2d at 390); *see also Gomez*, 734 F.2d at1109-10.

Trial counsel did not call any character witnesses to testify during the punishment phase of Petitioner's trial. Petitioner asserts witnesses were "available and ready to testify" and "could have told the jury positive things about Petitioner," including "Petitioner's lack of a criminal record, the fact that he was a good husband and father, that he was active in his church, that he worked hard, that he helped other people, etc." (Dkt. #1 p. 10). Petitioner states he told trial counsel "about these witnesses and asked that they be called to the stand." (Dkt. #1 p. 10). Petitioner argues that had these witnesses testified, "it would have made a difference in the punishment assessed Petitioner by the jury." (Dkt. #1 p. 10). According to Petitioner, he was "harmed" by trial counsel's failure to call any character witnesses "in that he received a harsher punishment than he would have otherwise received." (Dkt. #1 p. 10).

This claim was fully developed during the state habeas corpus proceeding. In support of his claim, Petitioner submitted the affidavits of Anna Rosas, Jose Adan Garcia, and Juana Garcia who stated they were available and willing to testify on Petitioner's behalf if trial counsel had "allowed" them to do so. (Dkt. #14-21, pp. 71-80). Anna Rosas' affidavit stated:

> I would have testified and will testify that Jose is a very respectful and humble man. I met Jose at church in 2007 and became his sponsor where I guided him in his faith. He is faithful in his service to God by offering his free time through mission trips to help the poor. He was actively involved with his church and brought his son to church regularly. Jose is very pleasant and compassionate with everyone, even his ex-wife with whom he had many problems. I never saw Jose act inappropriately, but rather he was always teaching his son good things. There are many people from church who know Jose and they all know he is a good person.

(Dkt. #14-21, p. 74). Jose Adan Garcia, Petitioner's brother-in-law, submitted an affidavit stating:

> I would have testified and will testify that Jose has earned my respect and admiration. I knew Jose as a friend for two years before he became my brother-in-law. Jose is a great father, husband, friend, and role-model. He has heart of service that is seen in his dedication to the church to this day. Jose dedicated considerable time to sharing his faith and building the church community. Jose was dedicated to developing and encouraging the faith of the youth in the church by sharing the teachings of the Bible. In addition to his faith, Jose is a hard worker and a natural leader who is respected and admired by his co-workers.
>
> Jose became one of my best friends and we spent considerable time together while he helped me fix things around my house. He is integral to the foundation of our family, not just for me but also for my three children. I have always believed Jose is a good role model for my children and I trust him completely. I have left my children in Jose's care and have never had any cause for concern. My children would tell me about the fun things they did with him and they always enjoyed spending time with him. I noticed that my children enjoyed the time they spent with Jose. Jose sends my youngest daughter cards and drawings of animals or flowers accompanied with a Bible verse, a testament to his faith and care for others. I do not believe that Jose is capable of hurting anyone, especially a child. Jose loves his children and regularly expressed to me his concern for them.

(Dkt. #14-21, pp. 76-77). Juana Garcia, Petitioner's wife, also submitted an affidavit stating:

> I would have testified and will testify that I believe Jose is innocent. He is great father, husband and friend. He is an honest, humble and transparent person. Jose was greatly involved in church activities at the Saint Mark the Evangelist Catholic Church in Plano. He often evangelized to others about the word of the Lord. He

participated in retreats where he volunteered in downtown Dallas to help the homeless by giving out food and providing haircuts. He was also an active participant in the Grupo de Oracion and Church Ministry.

Jose worked hard to provide for me and our son and was always concerned with the wellbeing of our son. Jose was actively involved in our son's education and is a good father. I never saw Jose treat any child in an inappropriate or abuse way. Jose desired to have a relationship with all his children. Jose is loving, caring, and never once lost his temper. I believe the accusations against my husband are false and the lies the jury heard are wrong.

(Dkt. #14-21, pp. 79-80).

Later, Petitioner submitted the affidavits of Viliulfo Ruiz Carlos and Jose Patricio Garcia

who also stated they were available and willing to testify on Petitioner's behalf. (Dkt. #14-21, pp.

85-92). Viliulfo Ruiz Carlos, a friend of Petitioner, provided the following affidavit:

I expected Jose's attorneys to contact me to testify because Jose and I are close friends, but they never did. I would have testified and will testify that Jose is a man of moral character. I have known Jose for thirteen years and he is a very caring individual. We would meet several times a week to get coffee or breakfast and I learned how caring he really is. Jose dedicated considerable time to serving others through acts of kindness and generosity. Jose volunteered to help the elderly mothers in the neighborhood by planting flowers in their gardens or repairing cracks in their driveways. He did nice things for people without being asked. Jose had a great respect for motherhood, he would go to retirement homes on Mexican Mother's Day to sing and play his guitar for the mothers there. Jose always tried to make others feel welcomed and loved, especially children. Jose would play his guitar at church for worship. The children would often crowd around Jose as he sang, and they enjoyed it so much they would clap and sing along.

Jose and I spent a considerable amount of time together over the years and I have witnessed Jose perform countless acts of kindness and selflessness. Jose loved and respected everyone, especially children. Jose served people with love and advocated for life. Jose has shown great love for his children and dedication to them. I have never had any reason to believe Jose could hurt anyone, especially a child.

(Dkt. #14-21, p. 88). Another friend of Petitioner, Jose Patricio Garcia, submitted the following

affidavit:

I was at the courthouse during Jose's trial to support him and testify on his behalf. I was asked to testify as a character witness by Jose's attorney. I could have testified

in support of Jose. But, I didn't testify because Jose's attorneys changed their mind and would not let me. I spoke with Jose's attorneys 2-3 times about testifying prior to trial. Additionally, I spoke with the attorney during the trial breaks. I took time off work to attend the trial and would have testified, if the attorneys would have allowed me to. I am currently available and willing to testify on Jose's behalf.

I would have testified and will testify that Jose is kind-hearted man. I met Jose through a church group nearly fifteen years ago. He was a great source of encouragement and helped me with my kids. I attended Jose's wedding and I asked him to be my daughter's godfather. He is a giving person and good around kids. I never saw Jose act inappropriately or do anything that made me doubt him. I completely trust Jose around my daughter. Jose is very likable and attended church groups regularly. I do not believe Jose could hurt a fly because he is a soft-spoken man and never got angry and never lost his temper, even when his ex-wife argued with him. The accusations against Jose do not sound like the same man I have personally known for nearly fifteen years.

(Dkt. #14-21, p. 91).

Counsel Medina addressed Petitioner's claim in his affidavit as follows:

45.    Did the State present any witnesses at the punishment phase of trial[?]

       Yes.

46.    Did Applicant ask to have Anna Rosas testify at punishment? A. If so, why did counsel choose not to call Rosas to testify?

       No, Applicant did not tell me any one person he wanted to have testify on his behalf. Applicant was supposed to be the first witness to testify in his own defense, to deny the allegations against him, after which I may have called character witnesses within trial time constraints. After the prosecution rested, but before the defense began, Applicant admitted to me that the allegations against him were true.

47.    Would testimony that Rosas believed Applicant to be respectful, pleasant, humble, and compassionate have been beneficial at punishment?

       No.

48.    Would testimony that Rosas never saw Applicant act inappropriately with children have been beneficial at punishment?

       No.

61

49.    Would testimony that Rosas believed that Applicant taught his son "good things" benefitted applicant at punishment?

No.

50.    Did Applicant ask to have Jose Garcia testify at trial? A. If so, why did counsel choose not to have Jose testify at trial?

No, Applicant did not tell me any one person he wanted to have testify on his behalf. Applicant was supposed to be the first witness to testify in his own defense, to deny the allegations against him, after which I may have called character witnesses within trial time constraints. After the prosecution rested, but before the defense began, Applicant admitted to me that the allegations against him were true.

51.    Would Jose's testimony that Applicant is a great father, husband, friend, and role model have benefitted applicant at punishment?

No.

52.    Would Jose's testimony that Applicant was dedicated to his church be beneficial at punishment?

No.

53.    Would Jose's testimony that Applicant was a hard worker and leader have been beneficial at punishment?

No.

54.    Would Jose's testimony that he had no concerns when leaving his children alone with Applicant have been beneficial at trial?

No.

55.    Would Jose's testimony that he did not believe Applicant was capable of hurting anyone benefitted Applicant at punishment?

No.

56.    Did Applicant ask to have Juana Garcia testify at trial? A. If so, why did counsel choose not to have Juana testify?

No, Applicant did not tell me any one person he wanted to have testify on his behalf. Applicant was supposed to be the first witness to testify in his own defense, to deny the allegations against him, after which I may have

62

called character witnesses within trial time constraints. After the prosecution rested, but before the defense began, Applicant admitted to me that the allegations against him were true.

57.    Would Juana's testimony that Applicant was innocent have been beneficial at punishment?

No.

58.    Would Juana's testimony that Applicant was an evangelist have been beneficial at punishment?

No.

59.    Would Juana's testimony that Applicant was a hard worker and provider have been beneficial at punishment?

No.

60.    Would Juana's testimony that she has not seen Applicant act inappropriately with or abuse children benefitted applicant at punishment?

No.

61.    Would Juana's testimony that Applicant sought a relationship with his children have been beneficial at punishment?

No.

62.    Did Applicant ask to have Viliulfo Ruiz Carlos testify at trial? A. If so, why did Carlos not testify at trial?

No, Applicant did not tell me any one person he wanted to have testify on his behalf. Applicant was supposed to be the first witness to testify in his own defense, to deny the allegations against him, after which I may have called character witnesses within trial time constraints. After the prosecution rested, but before the defense began, Applicant admitted to me that the allegations against him were true.

63.    Would Carlos's testimony that Applicant was caring and served others through acts of kindness and generosity benefitted applicant at punishment?

No.

64.    Would Carlos' testimony that Applicant helped elderly women have benefitted Applicant at punishment?

No.

65.    Would Carlos' testimony that children would crowd around Applicant as he sang at church benefitted applicant at punishment?

No.

66.    Would Carlo[s]'s testimony that applicant loved and respected everyone benefitted Applicant at punishment?

No.

67.    Did Applicant ask to have Jose Patricio Garcia testify at trial? a. If so, why did Garcia not testify at trial?

No.

68.    Would Garcia's testimony that has known Applicant for fifteen years and Applicant's his daughter's godfather have benefitted Applicant at punishment?

No.

69.    Would Garcia's testimony that he never saw Applicant act inappropriately and trusted Applicant around his daughter have benefitted Applicant at punishment?

No.

70.    Would Garcia's testimony that Applicant could not hurt a fly and is soft spoken have benefitted Applicant at punishment?

No.

(Dkt. #14-21, pp. 142-45). Counsel Pilgrim also stated in his affidavit that testimony from any of the above witnesses would not have benefitted Petitioner at the punishment phase. (Dkt. #14-21, pp. 115-19).

The state habeas court issued the following findings and conclusions concerning Petitioner's claim:

*Failure to Call Character Witnesses*

172.    Applicant did not ask Counsel Medina to call any witnesses and did not request that these witnesses in particular be called to testify;

173.    Applicant was supposed to be the first witness to testify and then he would have called character witnesses within trial time constraints;

174.    Applicant admitted to Counsel Medina that the allegations against him were true;

175.    The punishment range for continuous sexual abuse of a child is life confinement or a term of 25 to 99 years. Tex. Penal Code Ann. § 21.02(h);

176.    The punishment range for indecency by contact is a term of 2 years to 20 years. Tex. Penal Code Ann. §§ 12.33, 21.11 (d);

177.    Applicant was sentenced to 30 years' confinement for the continuous sexual abuse conviction and [] five years' confinement for the indecency by contact conviction. Both of these were on the low end of the punishment range;

178.    The State did not call any witnesses at the punishment hearing;

179.    According to Anna Rosas's affidavit, she would have testified that she believed (a) Applicant was respectful, pleasant, humble, and compassionate, (b) Applicant did [not] act inappropriately with children, and (c) he had taught his son good things;

180.    Counsel does not think that this testimony would have been beneficial at punishment;

181.    Other than to say that this testimony would have been favorable and beneficial to him, Applicant provides no argument to show how this evidence would have helped him at punishment, especially in light of the fact that he received punishment on the low end for both convictions and this witness would have been cross-examined by the State on whether she was aware of the specific facts of the case;

182.    Applicant has failed to meet his burden of proof by a preponderance of the evidence that counsel was deficient and that the outcome of trial would have been different had counsel called Rosas to testify;

183.    According to Jose Garcia's affidavit, he would have testified that (a) Applicant is a good father, husband, friend, and role model; (b) Applicant was dedicated to his church; (c) Applicant was a hard worker and leader;

(d) he had no concerns about leaving his children alone with Applicant; and (e) he did not believe that Applicant was capable of hurting anyone;

184.   Counsel does not think that this testimony would have been beneficial at punishment;

185.   Applicant provides no argument to show how this evidence would have helped him at punishment, especially in light of the fact that he received punishment on the low end for both convictions and this witness would have been cross-examined by the State on whether the witness was aware of the specific facts of the case;

186.   Applicant has failed to meet his burden of proof by a preponderance of the evidence that counsel was deficient and that the outcome of trial would have been different had counsel called Jose Garcia to testify;

187.   According to Juana Garcia's affidavit, she would have testified that (a) Applicant was innocent, (b) Applicant was an evangelist, (c) Applicant was a hard worker and provider, (d) she had not seen Applicant act inappropriately with or abuse children, and (e) Applicant sought a relationship with his children;

188.   Counsel does not think that this testimony would have been beneficial at punishment;

189.   Applicant provides no argument to show how this evidence would have helped him at punishment, especially in light of the fact that he received punishment on the low end for both convictions and this witness would have been cross-examined by the State on whether the witness was aware of the specific facts of the case;

190.   Applicant has failed to meet his burden of proof by a preponderance of the evidence that counsel was deficient and that the outcome of trial would have been different had counsel called Juana Garcia to testify;

191.   According to Viliulfo Carlos's affidavit, he would have testified that (a) Applicant was caring and served others through acts of kindness and generosity, (b) Applicant helped elderly women, (c) children would crowd around Applicant as he sang at church, and (d) Applicant loved and respected everyone;

192.   Counsel does not think that this testimony would have been beneficial at punishment;

193.   Applicant provides no argument to show how this evidence would have helped him at punishment, especially in light of the fact that he received

punishment on the low end for both convictions and this witness would have been cross-examined by the State on whether the witness was aware of the specific facts of the case;

194.    One aspect of Carlos's proposed testimony was that children would crowd around Applicant as he sang at church. Such testimony would not be beneficial because it would show Applicant's interactions with children;

195.    Applicant has failed to meet his burden of proof by a preponderance of the evidence that counsel was deficient and that the outcome of trial would have been different had counsel called Carlos to testify;

196.    Jose Garcia alleges that he would have testified that (a) Applicant is his daughter's Godfather, (b) he has never seen Applicant act inappropriately and trusted Applicant with his daughter, and (c) Applicant could not hurt a fly and is soft spoken;

197.    Counsel does not think that this testimony would have been beneficial at punishment;

198.    Applicant provides no argument to show how this evidence would have helped him at punishment, especially in light of the fact that he received punishment on the low end for both convictions and this witness would have been cross-examined by the State on whether the witness was aware of the specific facts of the case;

199.    Applicant has failed to meet his burden of proof by a preponderance of the evidence that counsel was deficient and that the outcome of trial would have been different had counsel called Garcia to testify;

200.    Character witnesses such as these are of limited value. First, their testimony is limited to opinion and reputation testimony of pertinent character traits according to the Rules of Evidence. Tex. R. Evid. 608(a). Many of the matters identified in Applicant's writ affidavits refer to specific instances of conduct or character traits not relevant to the issues at trial. *See* Tex. R. Evid. 608(b). Moreover, the trial prosecutor would have asked each witness whether they had heard or knew of the detailed allegations against Applicant. In the event they were unaware, this would damage their value as witnesses because they didn't know him. In the event they were aware, this would damage their credibility to the jury;

201.    Accordingly, Counsel Medina's opinions that such testimony would have little value are well taken[.]

(Dkt. #14-23, pp. 177-83). The TCCA denied relief without written order, which was an adjudication on the merits. *See Singleton*, 178 F.3d at 384.

A review of the record fails to show the state court's determination of this issue was in conflict with established federal law or was objectively unreasonable, and nothing in the record rebuts the presumption of factual correctness of the state court's findings with clear and convincing evidence. Petitioner fails to overcome the presumption trial counsel had a valid legal strategy for not calling character witnesses during the punishment phase of Petitioner's trial. As Counsel Medina explained, the affidavits show Petitioner interacted with children. And although the affidavits describe the interactions as innocuous or benign, the jury could have construed the interactions as opportunities for Petitioner to develop relationships with other children. Additionally, as the state court found, had the character witnesses testified, the prosecutor presumably would have cross-examined them and asked whether they had heard or knew of the detailed allegations against Petitioner. To the extent they were unaware of the allegations, their value as witnesses would be diminished because it would demonstrate they did not really know Petitioner. To the extent they were aware of the allegations, their credibility would be damaged. Thus, trial counsel's decision not to call witnesses whose testimony could have potential negative effects for Petitioner was reasonable trial strategy.

Even assuming, *arguendo*, trial counsel's performance was deficient, Petitioner has failed to show the state court acted unreasonably in determining his sentencing would have been different absent trial counsel's errors. *Dale*, 553 F.3d at 880. Petitioner was sentenced in the lower end of the sentencing range, and the affidavits do not create a reasonable probability that a jury would have given Petitioner a significantly less harsh sentence had the witnesses testified. *See id.* at 881. Having not shown deficient performance or prejudice, the state court's denial of this claim was

not contrary to, or an unreasonable application of, federal law. Petitioner has failed to show there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98. Therefore, Petitioner is not entitled to habeas relief on Ground Ten, and the claim should be denied.

## 2. Failure to Make a Closing Argument (Ground Eleven)

Last, Petitioner contends trial counsel provided ineffective assistance by failing to make a closing argument at the punishment phase of Petitioner's trial. (Dkt. #1, p. 10; Dkt. #5 pp. 31-32).

At the punishment phase of trial, the prosecutor reserved argument for rebuttal, and trial counsel waived argument. (Dkt. #14-17, pp. 7-8). When the prosecutor began rebuttal closing argument, trial counsel objected, arguing there was no argument to rebut. (Dkt. #14-17, p. 8). The trial court overruled the objection, stating he understood trial counsel's objection, but there was a "case on this that says they get to rebut anyway." (Dkt. #14-17, p. 8).

Petitioner asserts trial counsel's "failure to present an argument on Petitioner's behalf was a complete abandonment of the trial attorneys' role as advocates for Petitioner." (Dkt. #1, p. 10). This claim was fully developed during the state habeas corpus proceeding. Counsel Medina, misunderstanding the question about closing argument was referring to the guilt/innocence phase of trial instead of the punishment phase, indicated he had presented a closing argument. (Dkt. #14-21, p. 145, ¶ 72). The state habeas court issued the following findings and conclusions concerning Petitioner's claim:

*Failure to Make a Closing Argument at Punishment*

202. Applicant alleges that counsel was ineffective for failing to make a closing argument during punishment;

203. The State did not make an opening statement during the punishment phase;

204. Accordingly, Counsel Medina waived argument;

205.    In his affidavit, Counsel Medina claims that he did make a closing argument, the form of the question in the Order Designating Issues did not make it clear that the inquiry was about the punishment phase and not the guilt phase;

206.    When the State then attempted to make a rebuttal closing, counsel objected on the grounds that there was nothing to rebut;

207.    The trial court allowed the State to make an argument;

208.    It is clear from the record, that when the State waived argument, Counsel Medina also waived in an attempt to prevent the State from making an argument;

209.    Counsel had a valid legal strategy for waiving closing argument at the punishment phase;

210.    Applicant has failed to establish by a preponderance of the evidence that counsel was deficient;

211.    Applicant already received sentences on the low end of the punishment ranges;

212.    Applicant has failed to show how any argument would have changed the outcome of the punishment hearing[.]

(Dkt. #14-23, pp. 183-84). The TCCA denied relief without written order, which was an adjudication on the merits. *See Singleton*, 178 F.3d at 384.

A review of the record fails to show the state court's determination of this issue was in conflict with established federal law or was objectively unreasonable, and nothing in the record rebuts the presumption of factual correctness of the state court's findings with clear and convincing evidence. Petitioner fails to overcome the presumption trial counsel had a valid legal strategy for waiving closing argument at the punishment phase—attempting to prevent the State from presenting an argument or limiting the State's argument. Furthermore, although the State was allowed to present rebuttal argument, trial counsel made appropriate objections. (Dkt. #14-17, pp. 10-11). Even if trial counsel's decision to waive closing argument could be deemed deficient,

Petitioner fails to articulate how the absence of a closing statement resulted in any prejudice. By waving closing argument, trial counsel limited the State's available argument. Indeed, the State based its closing argument on general pleas for community safety and justice for the victim. (Dkt. #14-17, pp. 8-12).

Although trial counsel could have requested a sentence at the bottom of the sentencing range—twenty-five years—the jury was presumably aware that Petitioner did not want it to impose a lengthy term of imprisonment. *See Walker v. Dir., TDCJ-CID*, No. 5:19CV3, 2022 WL 561654, at *7 (E.D. Tex. Feb. 1, 2022), *report and recommendation adopted*, No. 5:19CV3, 2022 WL 544997 (E.D. Tex. Feb. 22, 2022). Furthermore, the prosecutor did not tell the jury "what number to assess in terms of years of punishment" (Dkt. #14-17, pp. 8-9), and the jury assessed punishment in the lower end of the punishment range—thirty years. Petitioner fails to demonstrate that had trial counsel argued Petitioner's lack of criminal record and the promise of rehabilitation in closing argument, his sentence would have been significantly less harsh. *See Spriggs*, 993 F.2d 88. Petitioner has therefore failed to establish prejudice as a result of closing argument not being made during the punishment phase of trial. The state court's denial of this claim was not contrary to, or an unreasonable application of, federal law. Petitioner has failed to show there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98. Therefore, Petitioner is not entitled to habeas relief on Ground Eleven, and the claim should be denied.

## C.  Cumulative Error

Petitioner asserts he is entitled to habeas relief based on the cumulative errors at the guilt phase and punishment phase. (Dkt. #5, pp. 25-38, 32-33). When Petitioner raised this claim in his state habeas corpus proceedings, the state habeas court found there was "no error to cumulate."

(Dkt. #14-23, p. 184). The TCCA denied relief without written order, which was an adjudication on the merits. *See Singleton*, 178 F.3d at 384.

"Federal habeas relief is only available for cumulative errors that are of a constitutional dimension." *Coble v. Quarterman*, 496 F.3d 430, 440 (5th Cir. 2007) (citing *Livingston v. Johnson*, 107 F.3d 297, 309 (5th Cir. 1997); *Yohey v. Collins*, 985 F.2d 222, 229 (5th Cir. 1993)). None of Petitioner's ineffective assistance of trial counsel claims establish ineffective assistance under *Strickland*. Petitioner has not identified errors of constitutional dimension. Thus, Petitioner fails to demonstrate the state court's rejection of his cumulative error claim was objectively unreasonable.

## VI. CONCLUSION

The Court lacks subject matter jurisdiction over Petitioner's habeas petition as it relates to Petitioner's conviction for indecency with a child. With respect to Petitioner's conviction for continuous sexual abuse of a child, Petitioner has failed to show his claims have merit. Specifically, Petitioner has failed to demonstrate trial counsel rendered ineffective assistance under *Strickland*. Above all, Petitioner has failed to show the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *Williams*, 529 U.S. at 402-03, 405-06; *Childress v. Johnson*, 103 F.3d 1221, 1224-25 (5th Cir. 1997). In sum, Petitioner has failed to show there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98. Accordingly, Petitioner's habeas petition should be dismissed without prejudice, as it relates to Petitioner's conviction for indecency with a child, and should be denied and dismissed with prejudice, as it relates to Petitioner's conviction for continuous sexual abuse of a child.

## VII.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Court of Appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). Although Petitioner has not yet filed a notice of appeal, it is recommended that the Court, nonetheless, address whether Petitioner would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (holding that a district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court," noting that "[f]urther briefing and argument on the very issues the court has just ruled on would be repetitious").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a substantial showing of the denial of a constitutional right in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). When a district court denies a motion on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, it is recommended that reasonable jurists could not debate the dismissal and denial of Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is recommended the Court find that Petitioner is not entitled to a certificate of appealability.

## VIII. RECOMMENDATION

It is recommended: (1) the above-styled petition filed under 28 U.S.C. § 2254 be dismissed without prejudice for lack of subject matter jurisdiction, as it relates to Petitioner's conviction for indecency with a child; and (2) the above-styled petition filed under 28 U.S.C. § 2254 be denied and dismissed with prejudice, as it relates to Petitioner's conviction for continuous sexual abuse of a child. It is further recommended that a certificate of appealability be denied.

Within fourteen days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(c). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*,

79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superceded by statute on other grounds*, 28 U.S.C.

§ 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 26th day of December, 2023.**

KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE